UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| RICHARD E. DAVIS<br>      Plaintiff,<br>v.<br>HARTFORD LIFE & ACCIDENT<br>INSURANCE COMPANY<br>      Defendant. | CASE NO. 3:14CV-507-TBR<br><br>COMPLAINT |

## Introduction

1. This complaint seeks legal and equitable damages arising from and relating to a long term disability insurance policy underwritten, issued and administered by Defendant.

2. The headings contained in this complaint are intended only to assist in reviewing the statements and allegations contained herein. To avoid the unnecessary repetition in each section, Plaintiff hereby affirms and incorporates each paragraph in each section of this complaint as though fully set forth therein.

3. The factual allegations found in this complaint are not exhaustive, and are presented throughout this complaint so as to provide the requisite notice of the basis for Plaintiff's allegations.

## Jurisdiction & Venue

4. This Court has subject matter jurisdiction over the claims asserted in this action for monetary and equitable relief under Federal Question Jurisdiction pursuant to 28 U.S.C. § 1331 and the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(e)(1) and § 1132(f).

5. Venue is appropriate in the United States District Court for the Western District of Kentucky pursuant to 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391.

Parties

6. Plaintiff Richard E. Davis is a citizen of the United States and an insured participant under the long term disability insurance policy at issue in this lawsuit.

7. Defendant Hartford Life & Accident Insurance Company is the underwriter, insurer and administrator of the long term disability insurance policy at issue in this lawsuit. Further, Hartford is, and was, doing business within the Commonwealth of Kentucky.

Facts

8. Mr. Davis is insured under a long term disability insurance policy underwritten, issued and administered by Hartford.

9. Mr. Davis ceased work in October 2011 because of limitations caused by his disabling conditions and corresponding treatment regimen. Subsequent to ceasing work, Mr. Davis has remained continuously disabled and unable to function on a full time basis in any gainful employment.

10. Hartford agreed Mr. Davis was disabled and provided him with disability benefits from October 2011 through April 2012 (short-term) and from April 2012 through April 2014 (long term). Despite his inability to return to gainful employment, and his disabling condition not improving, Hartford terminated his disability benefits.

11. Mr. Davis' debilitating medical condition has *not* improved subsequent to Hartford's initial determination that he was disabled under the terms of the policy. In addition, his disabling condition has not improved subsequent to the termination of his long term disability benefits by Hartford. The effects of his cancer and corresponding treatment effects continue to preclude him from engaging in full-time gainful employment.

12. Just as he was unable to function at a sedentary level during the two plus year period Hartford paid disability benefits, Mr. Davis remains unable to function at a sedentary level necessary to maintain fulltime gainful employment.

13. Mr. Davis' treating physicians confirmed his inability to engage in full-time gainful employment. His treating oncologist stated he "has multiple myeloma without remission.

He is easily fatigued with mild anemia. Patient has chronic pain syndrome secondary to multiple compression fractures."

14. Mr. Davis' treating oncologist confirmed Mr. Davis' condition has deteriorated to the point he is limited to sitting no more than 1 hour per day, standing or walking no more than 1 hour per day, with work activity limited to 1 hour per day – far short of gainful employment.

15. As to the strength level necessary for even sedentary employment, based on his examination and treatment, Mr. Davis' treating physician restricted Mr. Davis' lifting of up to 10 pounds to *infrequently* – less than the sedentary strength requirement.

16. The oncologist further confirmed Mr. Davis' pain (subjective complaints) are "reasonable in view of your observations and diagnoses", Mr. Davis' pain "would interfere with his reliably attending an eight hour a day, 40 hour work week", and Mr. Davis' pain is "moderately severe." These findings were confirmed by examination notes finding "Chronic pain syndrome secondary to multiple compression fractures previously with significant peripheral neuropathy and fatigue associated with this. He does continue on methadone as needed."

17. Based on his examination and treatment, Mr. Davis' treating physician concluded Mr. Davis is *not* capable of functioning in a "sedentary work capacity." This conclusion was further supported by medical records noting that Mr. Davis is "unable to perform any work activities."

18. Mr. Davis has met and continues to meet the requirements of the long term disability insurance policy necessary to continue receiving monthly benefits.

19. Mr. Davis exhausted his administrative remedies.

20. Mr. Davis's complaint is timely and is not otherwise time barred.

21. In administering Mr. Davis's disability claim, Hartford actively sought to terminate his claim including mischaracterizing his medical condition and treating physician opinions.

22. Hartford did not have Mr. Davis physically examined by a licensed physician.

23. Hartford did not explain why it disagreed with Mr. Davis's treating physicians.

24. Hartford disregarded the findings of its own record reviewer who found Mr. Davis unable to sit more than 3 hours in a workday as well as unable to stand more than 3 hours in a workday. In fact, Hartford's denial letter admitted Mr. Davis could only sit, stand or walk for a total of "3 hours per work day." This work restriction precludes fulltime gainful employment.

25. The insurance policy considers Mr. Davis disabled if he is "prevented from performing one or more of the Essential Duties of Any Occupation." The Any Occupation standard requires full-time gainful employment with the earnings test. Essential Duties requires Mr. Davis to "be at work for the number of hours in your regularly scheduled workweek" – 8 hours a day, 5 days a week. By Hartford's own admission, Mr. Davis cannot work more than 3 hours per day thereby meeting the policy definition of disability.

26. Hartford also relied on a flawed employability assessment. The assessment was not based on Mr. Davis's actual physical limitations. The assessment cited to inapplicable occupations – each requiring the ability to sit for the duration of the 8 hour workday or to stand for the duration of the 8 hour workday. The assessment also cited to non-existent jobs (i.e. jobs that only exist in theory). Moreover, none to the hypothetical jobs are readily available in Mr. Davis' labor market. Finally, each hypothetical job identified by Hartford had pre-hire requirements that Mr. Davis does not possess.

27. Hartford improperly and actively sought to have its paid medical reviewer alter his decision so as to support Hartford's preordained decision to terminate Mr. Davis' disability benefits.

28. Hartford utilized medical reviewers who have shown a high, if not absolute, propensity, of supporting its decision to deny claims including Mr. Davis.

29. Hartford's claims personnel are trained to make a reasonable decision, not an accurate decision.

30. The long term disability insurance policy does not provide Hartford with discretionary authority.

31. At all times relative hereto, Hartford has been operating under an inherent and structural conflict of interest because any monthly benefits paid to Mr. Davis are paid from Hartford's own assets with each payment depleting those same assets.

32. Hartford's corporate culture pressures claims personnel to terminate claims as well as to deny appeals in order to reduce the amount of monthly benefits paid.

33. Employees who save Hartford money by terminating or denying claims are more likely to be rewarded with bonuses compared with those who do not.

34. In administering Mr. Davis's long term disability claim, as it does with all claims, Hartford intentionally delays claim decisions – taking by way of example, automatic extensions of time in which to render a decision. The reason for Hartford's systemic delay in rendering claim decisions is it allows Hartford to earn income on the unpaid monthly benefits – at the expense of participants such as Mr. Davis.

35. Hartford's actions demonstrate a clear intent to terminate Mr. Davis' benefits regardless of any proof he submitted. By way of example, Hartford made the decision to terminate Mr. Davis' benefits four (4) months in advance.

36. Hartford did not rely on current medical records. Hartford did not obtain an actual physical examination, but relied on a prior medical review. Hartford did not rely on a current review of Mr. Davis' physical restrictions and limitations as of April 2014. In effect, Hartford speculated on Mr. Davis' future medical condition. Speculation is insufficient to support terminating disability benefits.

## Claims

### Breach of Contract

37. The long term disability insurance policy constitutes a written contract.

38. Contrary to the terms of the contract, and in breach thereof, Hartford improperly terminated Mr. Davis's monthly disability benefits.

39. Hartford's contractual breach has resulted in damage to Mr. Davis.

40. 29 U.S.C. §1132(a)(1)(B) is the enforcement mechanism permitting Mr. Davis to enforce the contractual terms of the Policy, to obtain past benefits, to receive reinstatement for payment of future benefits, and to obtain declaratory relief.

## Breach of Fiduciary Duty

41. Hartford was acting as a fiduciary in the administration of Mr. Davis's claim.

42. Hartford breached its duty to Mr. Davis (as well as all other participants), by:

   a. establishing a claims process in which its claims personnel systematically delay claim decisions;

   b. establishing a claims process in which its claims personnel automatically accept the opinions of Hartford's paid medical reviewers;

   c. establishing a claims process in which its claims personnel do not seek to reach an accurate decision, but instead only seek to render a reasonable decision;

   d. establishing a claims process in which Hartford places its financial interests ahead of the participants and beneficiaries;

   e. establishing a claims process in which Hartford does not consult with health care professionals with appropriate training and experience; and

   f. establishing a claims process in which Hartford does not seek independent and unbiased medical opinions, but instead seeks opinions favorable to its own financial interests.

43. 29 U.S.C. § 1132(a)(3) is the enforcement mechanism permitting Mr. Davis to seek, on behalf of himself and all other participants, appropriate equitable relief including enjoining Hartford's claims practices that violate the terms of the plan and ERISA, redressing such violations, and/or enforcing provisions of the plan and ERISA.

## Disgorgement

44. As a result of its delayed payment of his monthly benefits, including the systemic practice of delaying claim decisions, Hartford has accumulated earnings on the plan benefits

otherwise payable to Mr. Davis.

45. These accumulated earnings are rightfully the property of Mr. Davis.

46. 29 U.S.C. §1132(a)(1)(B) and 1132(a)(3) are the enforcement mechanisms permitting Mr. Davis to seek disgorgement from Hartford of these same accumulated earnings.

### Attorneys' Fees & Costs

47. As a result of Hartford's conduct, Mr. Davis has incurred attorneys' fees and costs.

48. 29 U.S.C. §1132(g) is the enforcement mechanism permitting Mr. Davis to recover reasonable attorneys' fees and costs.

### Prayer for Relief

49. Mr. Davis requests the Court enter judgment in his favor and against Hartford on all claims asserted herein. Mr. Davis requests the Court award reasonable attorneys' fees and costs.

50. Mr. Davis requests the Court award pre- and post-judgment interest at the greater of the prime rate or the rate earned by Hartford on the unpaid insurance benefits.

51. Mr. Davis requests the Court award any and all other legal or equitable relief to which he may be entitled.

52. Mr. Davis requests leave to amend the complaint as needed.

Dated:  July 16, 2014

Respectfully submitted,

s/ Michael D. Grabhorn
Michael D. Grabhorn
*m.grabhorn@grabhornlaw.com*
Grabhorn Law Office, PLLC
2525 Nelson Miller Parkway, Suite 107
Louisville, KY  40223
p: (502) 244-9331
f: (502) 244-9334

*Counsel for Plaintiff*