**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CIVIL ACTION NO. 3:14-CV-00507-TBR**


RICHARD E. DAVIS                                                             Plaintiff

v.

HARTFORD LIFE & ACCIDENT INSURANCE COMPANY                   Defendant


**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Plaintiff Richard E. Davis's Motion to Compel Discovery. (Docket No. 27.) Defendant Hartford Life & Accident Insurance Company ("Hartford") has responded, (Docket No. 30), and Plaintiff has replied, (Docket No. 31). Fully briefed, this matter is ripe for adjudication. For the reasons enumerated below, the Court will GRANT in part and DENY in part Plaintiff's Motion to Compel Discovery.


**Factual Background**

This dispute arises from Defendant Hartford's denial of Plaintiff Richard E. Davis's disability benefits claim. (Docket Nos. 1 at 2; 27 at 1.) Hartford provided Davis with short term disability benefits from October 2011 through April 2012 and long term disability benefits from April 2012 to April 2014. (Docket Nos. 1 at 2; 5 at 2-3.) Following these two time periods, Hartford terminated Davis's disability benefits. (Docket No. 27 at 1.) Davis then filed a Denial of Benefits claim as well as a Breach of Fiduciary Duty claim in this Court. (Docket No. 1 at 5-6.) After filing this action, Davis served Hartford with a set of interrogatories and requests to produce documents as well as requests to depose several of Hartford's employees, but the parties have been unable to agree as to what information is discoverable.

**Legal Standard**

Parties in a civil action generally "may obtain discovery regarding any unprivileged matter that is relevant to the claim or defense of any party." *Likas v. Life Ins. Co. of N. Am.*, 222 F. App'x 481, 485 (6th Cir. 2007) (citing Fed. R. Civ. P. 26(b)(1)). Unlike discovery in most civil actions, discovery in an ERISA denial-of-benefits action is substantially limited. *Id.* Discovery under ERISA is a largely unsettled area of law as federal courts continue to vary the scope of discovery permitted in ERISA actions even after the Supreme Court case on the matter, *Metro Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008). *See Mullins v. Prudential Ins. Co. of Am.*, 267 F.R.D. 504, 510 (W.D. Ky. 2010) (citing R. Alberts, J. Ghozland & M. Steinhardt, Circuits at Odds A Year After Glenn—No Clear Path, 51 No. 9 DRA 33 (Sept. 2009)). Generally, in an ERISA action, a "claimant may not seek discovery outside the administrative record." *Kasko v. Aetna Life Ins. Co.*, 33 F. Supp. 3d 782, 785 (E.D. Ky. 2014) (citing *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 618 (6th Cir. 1998)). This rule serves "[a] primary goal of ERISA [which is] to provide a method for workers and beneficiaries to resolve disputes over benefits inexpensively and expeditiously," *Perry v. Simplicity Engineering*, 900 F.2d 963, 967 (6th Cir. 1990), "and any routine consideration of evidence outside that presented to plan administrators would undermine Congress's intent." *Thornton v. W. & S. Life Ins. Co. Flexible Benefits Plan*, No. 3:08CV00648-M, 2010 WL 411119, at *1 (W.D. Ky. Jan. 28, 2010). Though generally discovery is confined to the administrative record, limited discovery outside of the record is permitted when it is "offered in support of a procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part." *Johnson v. Conn. Gen. Life Ins. Co.*, 324 F. App'x 459, 466 (6th Cir. 2009) (citing *Wilkins*, 150 F.3d at 619 (Gilman, J., concurring)).  Therefore, the Sixth Circuit limits discovery in ERISA actions but does not prohibit it. *Gluc v. Prudential Life Ins. Co. of Am.*, No. 3:14-CV-519-DJH, 2015 WL 4746249, at *4 (W.D. Ky. Aug. 5, 2015).

Case 3:14-cv-00507-TBR-LLK   Document 35   Filed 11/24/15   Page 3 of 25 PageID #: 2540

Having established that a court *may allow* limited discovery when an ERISA claimant alleges bias by the plan administrator or a violation by the plan administrator of his or her due process rights, the question for this Court becomes what does a claimant have to show for the court to allow such discovery? *Mullins*, 267 F.R.D. at 510. Prior to the Supreme Court's decision in *Glenn*, courts in the Sixth Circuit did not have a uniform standard for what triggered the exception to the general rule that under ERISA no discovery may occur outside the administrative record. *Busch v. Hartford Life & Accident Ins. Co.*, No. CIV.A. 5:10-00111, 2010 WL 3842367, at *1 (E.D. Ky. Sept. 27, 2010); *Thornton*, 2010 WL 411119, at *2; *Crider v. Life Ins. Co. of N. America*, 2008 WL 239659, at *3-4 (W.D. Ky. Jan. 29, 2008).

It was not until the Supreme Court's decision in *Glenn* that courts received guidance on what is required to trigger the exception. *See* 554 U.S. at 112-17. In *Glenn*, the Supreme Court held that when "a plan administrator both evaluates claims for benefits and pays benefits claims," there is a *per se* conflict of interest. *Id.* at 112. The Court stated that reviewing courts should consider this *per se* conflict as a factor when making a determination as to whether or not the plan administrator abused its discretion in its denial of benefits. *Busch*, 2010 WL 3842367, at *2 (citing *Glenn*, 554 U.S. at 108). Lastly, the Supreme Court found that it was not "necessary or desirable for courts to create special burden-of-proof rules, or other special procedural or evidentiary rules, focused narrowly upon the evaluator/payor conflict. . . .[because] special procedural rules would create further complexity, adding time and expense to a process that may already be too costly for many of those who seek redress." *Glenn*, 554 U.S. 116. Following the Supreme Court's decision, our sister court reasoned that *Glenn* "while not speaking directly to the scope of discovery, strongly implies in its decision that some discovery is available to ERISA plaintiffs to the extent that such plaintiffs find themselves faced with such a *per se* conflict of interest." *Mullins*, 267 F.R.D. at 511. As discovery is necessary for a plaintiff to gather evidence concerning the significance of the plan administrator's conflict of interest and the Supreme

3

Court's decision in *Glenn* requires courts to consider a conflict of interest as a factor in denial-of-benefits actions, "it is logical to assume that the Supreme Court meant for lower courts to allow some discovery beyond the administrative record when a conflict of interest is present." *McQueen v. Life Ins. Co. of N. Am.*, 595 F. Supp. 2d 752, 755 (E.D. Ky. 2009).

Following *Glenn*, the Sixth Circuit in an unpublished opinion declined to create special evidentiary or procedural rules relating to the evaluator/payor conflict of interest. *Johnson*, 324 F. App'x at 466. However, the court went on to reject the notion "that discovery will automatically be available any time the defendant is both the administrator and the payor under an ERISA plan." *Id.* at 467. Additionally, the court reasoned that "[d]istrict courts are well-equipped to evaluate and determine whether and to what extent limited discovery is appropriate in furtherance of a colorable procedural challenge under *Wilkins*." *Id.*

As the Sixth Circuit has provided minimal guidance on when discovery is available in an ERISA denial-of-benefits action where the defendant is both the administrator and the payor, district courts have continued to vary in their opinions concerning when discovery is available outside of the administrative record. *Kasko*, 33 F. Supp. 3d at 787. Some courts have found that the mere presence of an evaluator/payor conflict of interest is sufficient to allow discovery outside of the administrative record. *Mullins,* 267 F.R.D. at 512 ("The mere existence of an inherent conflict of interest that arises when the same entity is both plan administrator and benefits payor is itself the 'threshold.' ERISA plaintiffs need do no more than show the existence of such inherent conflict in order to obtain discovery."); *see also Gluc,* 2015 WL 4746249, at *5; *Busch,* 2010 WL 3842367, at *3; *Thornton*, 2010 WL 411119, at *2; *McQueen,* 595 F. Supp. 2d at 755; *Pemberton v. Reliance Standard Life Ins. Co.,* No. CIV. A. 08-86-JBC, 2009 WL 89696, at *1-2 (E.D. Ky. Jan. 13, 2009).[1] The courts who have found the mere presence of a conflict of

---

[1] In its Response, the Defendant cites to *Austin-Conrad v. Reliance Standard Life Ins. Co.*, No. CV 4:10CV-00127-JHM, 2015 WL 4464103, at *4 (W.D. Ky. July 21, 2015) to support its statement that "the

interest sufficient "reason that the act of denying discovery until there has been an initial showing of bias essentially handcuffs the plaintiff, who . . . will rarely have access to any evidence beyond a bare allegation of bias, in the absence of discovery." *Kasko,* 33 F. Supp. 3d at 786-87 (quoting *Kinsler v. Lincoln Nat. Life Ins. Co.*, 660 F. Supp. 2d 830, 836 (M.D. Tenn. 2009)) (internal quotation marks omitted).

Alternatively, some courts have determined that plaintiffs must show more than just the mere presence of an evaluator/payor conflict of interest. *Kasko,* 33 F. Supp. 3d at 787 (first citing *Donovan v. Hartford Life & Acc. Ins. Co.*, No. 1:10–2627–PAG, 2011 WL 1344252, at *2 (N.D. Ohio Apr. 8, 2011); then citing *Geer v. Hartford Life & Acc. Ins. Co.*, No. 08–12837–DAS, 2009 WL 1620402, at *5 (E.D. Mich. June 9, 2009) ("discovery should be allowed where a plaintiff has provided sufficient initial facts suggesting a likelihood that probative evidence of bias or procedural deprivation would be developed.")). In addition to showing that there is a conflict of interest, courts following this approach require plaintiffs to show sufficient facts to support their claim of bias before the court will allow discovery beyond the administrative record. *Id.*; *see also Donovan*, 2011 WL 1344252, at *2 ("[A] plaintiff is not automatically entitled to discovery on the conflict of interest factor . . . [and therefore] must allege some facts to support her claim that discovery might lead to relevant evidence; a mere allegation of bias is not sufficient.").

Having reviewed both approaches, this Court is persuaded by the case law followed by most fellow courts in Kentucky that the mere existence of an evaluator/payor conflict of interest is sufficient to allow discovery outside of the administrative record. Here, the plaintiff Davis

---

Western District of Kentucky usually requires a showing of something more than an inherent conflict or mere allegation of bias to allow discovery." (Docket No. 30 at 2.) While the court in *Austin-Conrad* suggests that this is the prevailing standard in the Western District, there are courts in the Western District of Kentucky who also follow the mere allegation approach and do not require a "showing of something more." *See Gluc,* 2015 WL 4746249, at *5; *Mullins,* 267 F.R.D. at 512; *Thornton*, 2010 WL 411119, at *2. As the court in *Austin-Conrad* noted, courts "must consider the unique facts of each case in light of *Glenn's* rejection of any 'one-size-fits-all' approach and admonition against establishing rigid rules or standards. Consequently, in some cases the bare allegation of a conflict of interest may suffice in light of the facts of the case."

alleges a conflict of interest as Hartford (1) determines whether an insured qualifies for benefits and (2) pays the insured's benefits out of its own funds. (Docket Nos. 1 at 2, 5; 31 at 2.) Hartford appears to concede there is as an inherent conflict of interest as it is both the evaluator and the payor of Davis's benefits. (Docket No. 30 at 2, 4). Therefore, this Court finds that the presence of an inherent conflict of interest is sufficient to warrant discovery beyond the administrative record.

This Court cautions that discovery is to be limited to the conflict of interest and allegation of bias. *Brainard v. Liberty Life Assura. Co. of Boston*, No. CIV.A. 6: 14-110-DCR, 2014 WL 7405798, at *4 (E.D. Ky. Dec. 30, 2014). Therefore, appropriate areas of discovery include whether "(i) there is a history of biased claim denials; (ii) the employer has made measures to reduce bias and promote accuracy; and (iii) company policies reward or encourage denials." *Kasko*, 33 F. Supp. 3d at 788 (citing *Raney v. Life Ins. Co. of N. Am.,* No. 08–169–JMH, 2009 WL 1044891, at *3 (E.D. Ky. Apr. 20, 2009)).  This Court's fellow courts in the Sixth Circuit have compiled a list of "permitted areas of inquiry—topics on which discovery related to an inherent conflict of interest may be had by an ERISA plaintiff." *Busch*, 2010 WL 3842367, at *4 (quoting *Mullins,* 267 F.R.D. at 513). The list includes:

- "incentive, bonus or reward programs or systems formal or informal for any employees involved in any meaningful way in reviewing disability claims." *Myers v. Prudential Ins. Co. of Am.*, 581 F. Supp. 2d 904, 914 (E.D. Tenn. 2008).

- "contractual connections between [plan administrator/payor] ... and the reviewers utilized in Plaintiff's claim ... and financial payments paid annually to the reviewers from the [administrator/payor]" *Pemberton*, 2009 WL 89696, at *3.

- "statistical data regarding the number of claims files sent to the reviewers and the number of denials which resulted." *Id.*

- "number of times the reviewers found claimants able to work in at least a sedentary occupation or found that claimants were not disabled." *Id.*

- "documentation of administrative processes designed only to check the accuracy of grants of claims (limited to claims guidelines actually consulted to adjudicate plaintiff's claims)."

*Gluc,* 2015 WL 4746249, at *6 (quoting *Bird v. GTX, Inc.*, No. 08-2852-JPM-CGC, 2009 WL 3839478, at *3 (W.D. Tenn. Nov. 13, 2009)). Furthermore, courts have identified specific categories of information that are not within the areas of permitted discovery. As explained by our sister court in *Gluc*:

> "Courts typically refuse to permit discovery into areas falling under the general category of reviewer credibility." *Thornton,* 2010 WL 411119, at *3. Areas such as employee pay records and personnel files are not discoverable. *Hays v. Provident Life and Acc. Life Ins. Co.,* 623 F. Supp. 2d 840, 845 (E.D. Ky. 2008) (citing *Myers,* 581 F. Supp. 2d at 915). The professional background of claim reviewers; whether reviewers have civil or criminal claims for disciplinary action; or, the history of patient treatment by medical reviewers also is not subject to discovery. *Raney,* 2009 WL 1044891, at *3. *See also, Pemberton,* 2009 WL 89686, at *4 ("[I]nformation regarding the training and qualifications of the reviewers is unlikely to lead to evidence concerning either the conflict of interest or bias [so that] the plaintiff is not entitled to discovery on these issues."); *Bird,* 2009 WL 3839478, at *3 (improper areas of inquiry include: personnel files, performance reviews and pay records of insurers' employees; and information regarding training and qualifications of reviewers).

2015 WL 4746249, at *6. Keeping this standard in mind, the Court moves on to the substance of the parties' dispute.

## Discussion

### A.  Identity of Claims Personnel

In interrogatories numbers 2 and 3, Davis seeks the identity of each person involved in Hartford's decision to deny his claim for benefits or uphold the termination of his benefits on appeal. (Docket No. 27 at 5.) Specifically, he seeks each person's name, address, occupation, current title, employer, and relationship to Hartford. (Docket No. 27 at 5.) In its initial response to the request, Hartford stated that the information requested can be found in the "claim notes that were produced as part of the administrative record." (Docket No. 27 at 5). Additionally, in its Response to Davis's Motion to Compel, Hartford provides the documents that it referred to in its initial response to Davis's request and states that the 164 pages of documents contain the identity

and title of everyone involved in Davis's claim for benefits. (*See* Docket No. 30-8.) Hartford cites to Rule 33(d) of the Federal Rules of Civil Procedure and argues that "the burden of deriving the answer from those documents is substantially the same for either party." (Docket No. 30 at 9.)

Davis in turn argues that the identity of every individual involved in his benefits decision "cannot readily be determined from the claim file," and he cannot determine from the claim file the employer of each individual involved and their title. (Docket No. 27 at 6-7.) Lastly, Davis believes Hartford's citation to Rule 33(d) is insufficient because it does not provide pincites to the specific documents among the 164 pages that would answer his question. (Docket No. 27 at 7.)

Federal Rule of Civil Procedure 33(d) allows a party to respond to interrogatories by producing business documents. Rule 33(d) permits the following:

> If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by:
>
> > (1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and
> >
> > (2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries.

Fed. R. Civ. P. 33(d). As our sister court recently noted in a case involving similar issues:

> Rule 33(d) is not intended to be used as "a procedural device for avoiding the duty to give information." *In re Johnson*, 408 B.R. 115, 122 n.3 (Bankr. S.D. Ohio  2009). In other words, "The responding party may not avoid answers by imposing on the interrogating party a mass of business records from which answers cannot be ascertained by a person unfamiliar with them." *In re G–I Holdings, Inc.*, 218 F.R.D. 428, 438 (D.N.J. 2003). A party who seeks to rely upon the Rule must not only certify that the answer may be found in the records referenced by it, but also "must specify where in the records the answers [can] be found." *Cambridge Electronics Corp. v. MGA Electronics, Inc.*, 227 F.R.D. 313, 322–23 (C.D. Cal. 2004) (citing *Rainbow Pioneer No. 44–18–04A v. Hawaii– Nevada Investment Corp.*, 711 F.2d 902, 906 (9th Cir. 1983)). A party that attempts to rely upon Rule 33(d) with a mere general reference to a mass of

documents or records has not adequately responded. *Hypertherm, Inc. v. American Torch Tip Co.*, 2008 WL 5423833 at *3 (D.N.H. 2008).

*Mullins*, 267 F.R.D. 504, 514-15. While Hartford has specified that the information can be found in the 164 pages of claim notes, this Court finds that is not sufficient detail to enable Davis to locate and identify the information sought within those records. Having reviewed the 164 pages of claim notes, this Court finds merit in Davis's argument that the identity, employer, and title of those involved in the denial of his claim is not entirely ascertainable from the information provided. For the aforementioned reasons, the Court finds that with respect to interrogatories 2 and 3 Hartford's response is insufficient, and Davis's Motion to Compel is **GRANTED**.

### B.  Affirmative Defenses

Davis's interrogatory number 4 seeks the factual basis for each of Hartford's affirmative defenses and his RPD number 14 seeks documents related to Hartford's affirmative defenses. (Docket No. 27 at 7, 22-23.) In its Answer, Hartford asserts eleven affirmative defenses. (Docket No. 5 at 8-9.) Hartford argues that Davis is not entitled to know the factual basis of its affirmative defenses because it concerns the merits of Davis's claim and legal theories are privileged and therefore not discoverable. (Docket No. 30 at 9.) Hartford also argues that "the defenses identified in [its] Answer are not 'true' affirmative defenses, as they do not allege new facts or arguments upon which it would bear the burden of proof." (Docket No. 30 at 9.) Lastly, Hartford states that the factual bases for its affirmative defenses are already within the administrative record. (Docket No. 30 at 10.)

Davis's interrogatory 4 is a "contention" interrogatory meaning that it "seek[s] to clarify the basis for or scope of an adversary's legal claims." *Starcher v. Corr. Med. Sys., Inc.*, 144 F.3d 418, 421 n.2 (6th Cir. 1998) *aff'd sub nom. Cunningham v. Hamilton Cnty., Ohio*, 527 U.S. 198 (1999). The Sixth Circuit Court of Appeals has stated that the "general view is that contention interrogatories are a perfectly permissible form of discovery, to which a response ordinarily would be required." *Id.* As one court stated in its opinion concerning discovery in an ERISA

action, "[i]t is widely accepted that 'contention interrogatories' which ask a party to state the facts upon which it bases a claim or defense, are a permissible form of written discovery." *Alexander v. Hartford Life & Acc. Ins. Co.*, No. 3-07-CV-1486-M, 2008 WL 906786, at *4 (N.D. Tex. Apr. 3, 2008). Furthermore, Rule 33(a)(2) of the Federal Rules of Civil Procedure states that "[a]n interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact." Fed. R. Civ. P. 33(a)(2). "[T]he purpose of the discovery rules is to bring to light the parties' positions in an informed and controlled manner that winnows down the resolution of a dispute" to show the factual and legal issues. *Burnett & Morand P'ship v. Estate of Youngs*, No. 3:10-CV-3-RLY-WGH, 2011 WL 1237950, at *3 (S.D. Ind. Apr. 4, 2011). Therefore, when a party is asked to provide "contention type discovery [the party] must identify the witnesses and documents he/she has marshaled . . . and to help illuminate the issues to be resolved as the responses and answers are due." *Id.*

Given the commonality and acceptance of "contention" interrogatories, this Court finds Hartford's arguments that it should not have to respond Davis's interrogatory 4 unpersuasive. Hartford must simply "be able to *generally explain* the factual basis for each . . . affirmative defense[] pled in its . . . answer." *Barkley v. Life Ins. Co. of N. Am.*, No. 3-07-CV-1498-M, 2008 WL 450138, at *1 (N.D. Tex. Feb. 19, 2008) (emphasis in original). Finally, it is not sufficient for Hartford to state that the factual bases for its affirmative defenses are in the "administrative record."  As previously stated under Rule 33(d) of the Federal Rules of Civil Procedure, "[a] party who seeks to rely upon the Rule must not only certify that the answer may be found in the records referenced by it, but also "must specify where in the records the answers [can] be found." *Mullins*, 267 F.R.D. 504, 514-15 (citations omitted). Hartford must provide Davis with an explanation of the factual basis for each affirmative defense set forth in its answer and provide any documents that relate to its affirmative defenses. Therefore, Plaintiff's Motion to Compel as to interrogatory 4 and RPD 14 is **GRANTED**.

## C. Compensation of Claims Personnel

In interrogatory number 5, Davis asks Hartford to describe its compensation practices for disability claims personnel. (Docket No. 27 at 9.) Additionally, in his RPD number 8, Davis seeks documents from Hartford detailing its compensation and bonus structure for disability claims personnel. (Docket No. 27 at 21.) Davis states that his requests are "not limited to the specific compensation of each individual at Hartford, but specifically the bonus and incentives employees have for denying claims." (Docket No. 27 at 10.) Hartford objects and argues that the requested information is confidential and under ERISA, "information about compensation paid to specific employees (salary and bonuses) is not discoverable. (Docket No. 30 at 10.)

District courts in the Sixth Circuit have developed a list of permitted areas of inquiry in ERISA discovery. *Busch,* 2010 WL 3842367, at *4. The list includes information relating to "[i]ncentive, bonus or reward programs or systems formal or informal for any employees involved in any meaningful way in reviewing disability claims." *Gluc,* 2015 WL 4746249, at *6 (citation omitted). Just as courts have a list of areas of inquiry that are discoverable, courts also have a list of areas of inquiry that are not discoverable in ERISA actions. *Id.*; *see also Busch,* 2010 WL 3842367, at *4. One area of inquiry into which courts do not allow discovery is employee pay records. *Id.* (first citing *Hays,* 623 F. Supp. 2d at 845; then citing *Myers,* 581 F. Supp. 2d at 915). Consequently, Hartford is correct that it need not provide information about compensation paid to specific employees in its response, as employee pay records are not discoverable. However, Hartford must provide Davis with information relating to any incentive, bonus, or reward programs or systems for its disability claims personnel. Therefore, Davis's requests in interrogatory 5 and RPD 8 are **GRANTED** in part and **DENIED** in part.

## D.  Performance Review

Interrogatory number 6 asks Hartford to describe its performance review procedures for disability claims personnel, and RPD number 9 seeks performance reviews for each person involved in his claim. Davis reasons that discovery on this issue will likely show that Hartford's

corporate structure pressures its employees to deny claims. (Docket No. 27 at 12.)  Davis also states that "[w]hile some courts have been reluctant to provide blanket discovery of personnel records, this reluctance has been limited to (a)(1)(B) [denial of] benefit claims, not to (a)(3) [breach of fiduciary duty] claims." (Docket No. 27 at 12.)  Lastly, Davis argues that courts' reluctance to allow blanket discovery has been tempered where the information is sought in order to show that the defendant pressures claims personnel to deny claims. (Docket No. 27 at 12.) Hartford in turn argues that the requested information is confidential and highly sensitive and cites an abundance of decisions in which courts have held that performance reviews are not discoverable. (Docket No. 30 at 11.)

Hartford is correct that overwhelmingly district courts in the Sixth Circuit do not allow discovery into areas "falling under the general category of reviewer credibility" which includes individual personnel files. *Gluc,* 2015 WL 4746249, at *6 (quoting *Thornton*, 2010 WL 411119, at *3). However, Davis is also correct that some courts' reluctance to grant discovery into a defendant's performance review procedures is tempered when the claimant seeks the information as evidence that claim's personnel were pressured to deny claims. *Mulligan v. Provident Life & Acc. Ins. Co.*, 271 F.R.D. 584, 594 (E.D. Tenn. 2011) (citing *Hays*, 623 F. Supp. 2d at 844-45). In *Hays*, the court denied the claimant's request for performance reviews, but permitted discovery of "any type of incentive, bonus, or reward program or system, formal or informal, and indicated that if the former requests produced information suggesting the influence of bias it might revisit the issue." *Id.* (citing *Hays*, 623 F. Supp. 2d at 845.) Additionally, while the court in *Mulligan* did not allow discovery of the defendant's performance reviews because the defendant's policies explicitly prohibited the consideration of claims outcomes in performance reviews, it also stated that it "was not prepared to say that performance reviews will never be discoverable." *Id.* The court in *Mulligan* announced that it agreed "with those decisions which have contemplated a phased discovery process." *Id.* This Court is persuaded by the *Mulligan* court's analysis and as such permits discovery at this time of "incentive, bonus or reward programs or systems formal or

12

informal for any employees involved in any meaningful way in reviewing disability claims." *Gluc,* 2015 WL 4746249, at *6 If the aforementioned discovery material contains information that suggests the influence of bias, then this Court may revisit this issue. Consequently, Davis's Motion to Compel as to interrogatory 6 and RPD 9 is **DENIED**.

### E. Relationship with Third Parties

Davis's interrogatories numbers 7-11 request that Hartford describe its relationship with third party vendors MCN and UDC, independent medical examiner Dr. Frederick Wener and outside medical reviewers Drs. Rosaline Vasquez and Phillip Marion. (Docket No. 27 at 13.) Additionally, Davis's RPD numbers 20-24 request that Hartford provide all documents in its possession that relate to its relationship with the aforementioned third parties. (Docket No. 27 at 24.) Specifically, Davis requests Hartford provide any "contracts, draft reports, final reports, authorization to affix physician signature to final report, dictated opinions, correspondence, emails, notes, diary entries, [and] statistical reports" in its possession that relate to the aforementioned third parties. (Docket No. 27 at 24.)

Davis argues that he seeks the information requested, "so as to better understand the arrangement between Hartford and each third-party . . . [and] to discern whether or not Hartford complied with ERISA's claim regulations." (Docket No. 27 at 14.) He also states that he needs the requested discovery "to determine the extent to which any bias or conflict of interest impacted his claim." Hartford responds that these requests are "harassing, unduly burdensome, oppressive and overly broad; and information relating to the qualifications, training, background, and/or credibility of in-house and third party medical reviewers is not discoverable." (Docket No. 30 at 12; *see also* Docket No. 30 at 21-22.)  Hartford also states that Davis subpoenaed third party vendors MCN and UDC, and they produced documents regarding independent medical examiner Dr. Wener and outside medical reviewers Drs. Vasquez and Marion. (Docket No. 30 at 22.) Harford argues that Davis does not provide any explanation as to why he requires additional information from Hartford. (Docket No. 30 at 22.) Lastly, Hartford contends, "to the extent that

[Davis] seeks documents pertaining to other claimants, [his] request should be denied because it raises serious HIPAA and privacy concerns." (Docket No. 30 at 22 (quoting *Mullins*, 267 F.R.D. at 522) (internal quotation marks omitted).)

ERISA claimants may seek discovery related to "third-party vendors whose opinions or reports may have been unduly influenced by financial incentives." *Gluc*, 2015 WL 4746249, at *8. As previously mentioned, district courts in the Sixth Circuit have developed a list of permitted areas of inquiry in ERISA discovery. *Busch,* 2010 WL 3842367, at *4. The list includes information relating to the "[c]ontractual connections between Hartford and the reviewers utilized in the plaintiff's claim, and financial payments paid annually to the reviewers from Hartford." *Id.* (citing *Pemberton*, 2009 WL 89696 at *3). The list also allows discovery into "[d]ocumentation of administrative processes designed only to check the accuracy of grants of claims (limited to claims guidelines actually consulted to adjudicate plaintiff's claim)." *Id.* (quoting *Bird*, 2009 WL 3839478, at *3). As Hartford notes in its Response, district courts generally disallow discovery into matters involving the professional background of reviewers. *Id.* "This includes information such as the training and qualifications of the reviewers, whether the reviewers have faced criminal charges, civil suits, or disciplinary action, whether the reviewers failed to become board-certified, or whether the reviewers recently treated patients." *Id.* As this Court finds this precedent persuasive, it directs the parties to follow the aforementioned parameters with regards to Davis's interrogatories 7-11 and RPD 20-24. Hartford should respond to the interrogatories with information concerning its contractual connections to the third parties and the financial payments paid to them annually along with information concerning any documentation of administrative processes designed only to check the accuracy of grants of claims. However, Hartford is not required to provide any response with regards to the credibility or professional backgrounds of the third parties. Hartford is also not required to provide documents pertaining to other claimants as those documents are not relevant to Davis's claims, and they would undoubtedly contain confidential information "that could not be produced without raising serious HIPAA and privacy

concerns that make production of such documents far more burdensome than potentially relevant." *Mullins*, 267 F.R.D. 522. Davis's Motion to Compel interrogatories 7-11 and RPD 20-24 is **GRANTED**.

### F. Reasons for Denying Davis's Claim

In interrogatories numbers 12-13, Davis requests that Hartford state each specific reason supporting its decision to deny his claim and his appeal. (Docket No. 27 at 15.) Furthermore, Davis requests that for each of its stated reasons, Hartford identify the specific document provided to him (prior to the lawsuit) in which Hartford notified him of the stated reason and the additional information needed for approval of his claim or appeal. (Docket No. 27 at 15.) Through this request, Davis alleges that he seeks to obtain evidence that will show whether or not Hartford complied with ERISA's claim regulations. (Docket No. 27 at 15.) He also argues that his request is intended to avoid Hartford's introduction of *post hoc* rationale in its merits briefing. (Docket No. 27 at 15.) In his Reply, Davis states that Hartford's Response to his Motion to Compel is the first time it cited directly to a document in the record, (Docket No. 30-3), that contained its specific reasons for its denial. However, Hartford cited to a document that only concerns Davis's appeal. (Docket No. 31 at 10-11.)

Hartford argues that the information sought is related to the merits or substance of the claim decision and is not discoverable. (Docket No. 30 at 14.) Hartford also insists that the administrative record contains all of its stated reasons for its decision to deny Davis's claim and appeal and, therefore, the administrative record is the "best evidence" of its reasons. (Docket No. 30 at 14.) Lastly, Hartford contends that as all of its stated reasons for its denial of Davis's claim and appeal are in the administrative record, the record will be sufficient to prevent it from relying on *post hoc* rationales. (Docket No. 30 at 14-15.)

Under ERISA, 29 C.F.R. § 2560.503-1(g)(1) states that "the plan administrator shall provide a claimant with written or electronic notification of any adverse benefit determination." The regulation also requires that the "notification shall set forth, in a manner calculated to be

understood by the claimant . . . the specific reason or reasons for the adverse determination." 29 C.F.R. § 2560.503-1(g)(1)(i).

Here, the Court finds that Davis is entitled to know whether or not Hartford complied with 29 C.F.R. § 2560.503-1(g)(1), particularly if Hartford provided him with notice of the specific reasons for its denial. Consequently, Hartford's response to interrogatories numbers 12-13 is insufficient in so far as Hartford has not identified the documents it provided to Davis prior to the lawsuit that notified him of its stated reasons for its denial of his claim in accordance with 29 C.F.R. § 2560.503-1(g)(1).  Hartford need not state each specific reason supporting its decision to deny Davis's claim and his appeal, but it must identify the documents in which it informed Davis of its reasons for its denial of his benefits claim. Therefore, Davis's Motion to Compel interrogatories 12-13 is **GRANTED** in part and **DENIED** in part.

### G. Statistical Information from Third-Party Vendors

Davis's interrogatories numbers 14-18 request that Hartford disclose the following: (1) the number of claims for which Hartford has retained the third party; (2) the number of times that the third party has supported that (a) a claimant is disabled, (b) a claimant is not disabled, (c) a claimant is partially disabled; and (3) the total amount Hartford has paid to the third party. (Docket No. 27 at 16-17.) The entities/individuals at issue in Davis's interrogatories are every third-party vendor, independent medical examiner, and outside medical reviewer involved in his claim. (Docket No. 27 at 16-17.) Davis's requests seek statistical data from Hartford in an attempt to establish a history of biased claim administration. *Kasko*, 33 F. Supp. 3d at 789.

Davis argues that when insurance companies hire third-party vendors and physicians to review disability claims, it raises significant concerns that [these third-parties] are financially biased. (Docket No. 27 at 18.) Davis reasons that these third parties' desire to obtain repeat business may likely lead them to have a bias in favor of the insurer. (Docket No. 27 at 18). In support of his position, Davis cites to several Kentucky district court opinions in which the court granted discovery requests for statistical data concerning the claims decisions of third parties and

their compensation. (Docket No. 27 at 18-19 (citing *Kasko*, 33 F. Supp. 3d at 789; *Mullins*, 267 F.R.D. at 517-18; *Raney,* 2009 WL 1044891 at *3).)

Hartford states that there is a split of case law regarding this type of discovery. (Docket No. 20 at 15.)  As support, Hartford cites to two Kentucky district court decisions allowing this area of discovery and one Ohio district court decision that denied discovery under similar circumstances. (Docket No. 30 at 15 (citing *Austin-Conrad*, 2015 WL 4464103, at *6; *Neubert v. Life Ins. Co. of N. Am.*, No. 5:13 CV 643, 2013 WL 5595292, at *5-6 (N.D. Ohio Oct. 10, 2013); *Kasko*, 33 F. Supp. 3d at 789).) Hartford also argues Davis has not shown that the benefit of the evidence obtained through this discovery would outweigh the burden of obtaining the information. (Docket No. 30 at 16.) Lastly, Hartford argues that the inherent conflict factor "is unlikely to be important in this case because the evidence (including the opinions of Plaintiff's treating physicians) strongly supports [its] decisions." (Docket No. 30 at 16.)

District courts in Kentucky widely acknowledge that the statistical information and financial information sought by Davis in interrogatories 14-18 is permissible in discovery. *See Gluc*, 2015 WL 4746249, at *6; *Kasko*, 33 F. Supp. 3d at 789; *Busch*, 2010 WL 3842367, at *4. Courts reason that "if [insurers] relied on third-party reviewers whose opinions or reports may have been unduly influenced by financial incentives, the [c]ourt would benefit from information revealing the compensation arrangement." *Kasko*, 33 F. Supp. 3d at 789 (quoting *Crider v. Life Ins. Co. of N. Am.*, No. 3:07CV331–H, 2008 WL 239659, at *6 (W.D. Ky. Jan. 29, 2008). Notably, "[t]he financial incentives, combined with the physicians' recommendations, could assist the Court in resolving an allegation of biased claim administration." *Id.* Courts have allowed discovery of this statistical information to span up to a ten-year period. *See id.* (citing *Pemberton*, 2009 WL 89696, at *4.) As this Court stated previously, courts in the Sixth Circuit generally allow discovery of the following:

- "contractual connections between [plan administrator/payor] ... and the reviewers utilized in Plaintiff's claim ... and financial payments paid annually to the reviewers from the [administrator/payor]" *Pemberton*, 2009 WL 89696, at *3.

- "statistical data regarding the number of claims files sent to the reviewers and the number of denials which resulted." *Id.*

- "number of times the reviewers found claimants able to work in at least a sedentary occupation or found that claimants were not disabled." *Id.*

This Court finds the reasoning of its fellow district courts in Kentucky persuasive and, therefore, will require Hartford to provide the financial and statistical information Davis has requested in interrogatories 14-18 with the caveat that Hartford need not provide information that spans a time period longer than ten years. Additionally, the Court notes that it disagrees with Hartford that Davis has not shown that the benefit of the evidence obtained through this discovery would outweigh the burden of obtaining the information as district courts in Kentucky have found this information to assist the Court in resolving an allegation bias. For the aforementioned reasons, Davis's Motion to Compel Hartford's response to interrogatories 14-18 is **GRANTED** for the years 2005 to present.

### H.  Claim Administration Materials and Manuals

In his RPD number 2, Davis requests that Hartford provide claim administration materials and manuals utilized by, or available to, the long-term disability claims unit. In support of his request, Davis cites 29 CFR § 2560.503-1(b) which requires insurers to "establish and maintain reasonable claim[] procedures." Davis seeks to review Hartford's claim administration materials and manuals to determine whether or not Hartford has adhered to ERISA's requirements, specifically 29 § CFR 2560.503-1(b)(5). Additionally, Davis cites to *Mullins* and claims "courts in this district have confirmed [his] right to this discovery." (Docket No. 27 at 20 (citing *Mullins*, 267 F.R.D. at 520).)

Hartford objects to Davis's request and argues that "internal claims handling procedures, guidelines or materials that it did not rely upon or consider when deciding [Davis's] claim are not

18

discoverable." (Docket No. 30 at 16.)  In support of its position, Hartford relies on two opinions in which the court declined to allow discovery of an insurer's internal guidelines because the insurer did not use the internal guidelines when making its determination regarding the claimant at issue. (Docket No. 30 at 16-17 (first citing *Gabrenya v. Managed Disability Plan*, No. 2:12-CV-1217, 2013 WL 6154573, at *3-5 (S.D. Ohio Nov. 20, 2013); then citing *Geiger v. Pfizer, Inc.,* Case No. 2:10-cv-106, 2012 U.S. Dist. LEXIS 11599, *10-13 (S.D. Ohio Jan. 31, 2012).) Hartford also argues that the portion of *Mullins* Davis relies on does not in fact support Davis's position because "it did not pertain to a request for a claims manual but instead concerned an interrogatory about administrative processes and safeguards." (Docket No. 30 at 17.)

In regards to the parties' disagreement concerning the applicability of *Mullins*, this Court finds it is distinguishable and, therefore, it does not support Davis's position. The portion of *Mullins* at issue concerns an interrogatory in which the claimant requested that the insurer describe its administrative procedures and safeguards "designed to ensure and verify that benefit claim determinations are made in accordance with governing plan documents, and that plan provisions have been applied consistently with respect to similarly situated claimants." *Mullins*, 267 F.R.D. at 520. The court found that the insurer's response to the interrogatory was insufficient as it was vague and only generally referenced the existence of training for employees and quality review procedures. *Id.* The court determined that the claimant was "entitled to know specifically what training such claims professionals received relevant to the subject matter of the interrogatory and what quality review procedures are in place . . . and were used to ensure the fair and proper administration of [the claimant's] claim." *Id.* Here, the dispute involves a request for documents not an interrogatory. While the request in *Mullins* concerned information regarding the insurer's administrative processes and safeguards with respect to preventing bias in claims' decisions, Davis's request is not as narrowly tailored as he simply seeks all claim administration materials and manuals used by or available to employees in the disability claims unit. (Docket

No. 27 at 19.) Davis's request does not simply seek the administration materials and manuals utilized by claims personnel regarding his claim nor does he seek just the information relevant to the proper adjudication of his claim.

As Hartford notes in its Response, some Sixth Circuit courts have declined to require insurers to produce their guidelines, manuals and other administrative materials when the claimant failed to offer evidence suggesting that the insurer used the materials in the adjudication of his or her claim. *See Gabrenya*, 2013 WL 6154573, at *5; *Geiger,* 2012 U.S. Dist. LEXIS 11599, *13. In addition to the cases that Hartford cites to in its Response, this Court found several other cases in which courts have refused to compel production of an insurer's entire manual or guidelines or other administrative materials and instead required production only of those administrative materials used in processing the claimant's claim for benefits. *See Hatfield v. Life Ins. Co. of N. Am.*, No. 5: 14-432-DCR, 2015 WL 5722791, at *5 (E.D. Ky. Sept. 29, 2015); *McQueen*, 595 F. Supp. 2d at 755 n.2; *Byrd v. Metro. Life Ins. Co.*, No. 3:07-CV-206, 2008 WL 974787, at *2 (E.D. Tenn. Apr. 9, 2008). The district court in *Hatfield* found that "internal policies and procedures that were not relied on for the specific determination are not discoverable, even where an inherent conflict of interest permits some discovery outside the administrative record." 2015 WL 5722791, at *5.

The Court is persuaded by the reasoning of its fellow Sixth Circuit courts. Therefore, this Court finds Davis's current request is overly broad and seeks information Davis is not entitled to discover. Davis's request that Hartford provide claim administration materials and manuals utilized by, or available to, the long-term disability claims unit is **DENIED**.

## I.   Training Materials and Manuals

In his RPD number 3, Davis requests Hartford's training materials and manuals utilized by, or available to, the long-term disability claims unit. (Docket No. 27 at 20.) The Court finds

that this request suffers from the same defects as his previous request. Therefore, Davis's request is **DENIED**.

### J.  Delegation of Authority

In Davis's RPD number 17, he requests that Hartford provide each document concerning any delegation of discretionary authority. Davis argues that he requires discovery concerning any delegation of discretionary authority that "Hartford believes would serve to alter the applicable standard of review" of Hartford's denial of benefits from *de novo* to an abuse of discretion standard of review. (Docket No. 31 at 12.) In its Response, Hartford points to the administrative record and refers Davis to the U.S. Bank Long Term Disability Group Benefit Plan. (Docket No. 30 at 21.) Furthermore, Hartford identified the exact location in the administrative record of the Plan. (Docket No. 30 at 21.) Davis is not satisfied with Hartford's response because "he cannot discern exactly what language Hartford is relying [on] for any alleged discretion" from its citation to the Plan. (Docket No. 31 at 12.) He also states that it is impossible for him "to review the insurance policy and glean who exercised any alleged discretion and whether they had authority to do so." (Docket No. 31 at 12.)

The Supreme Court has held that courts are to review a claimant's challenge to his or her denial of benefits in an ERISA action under a *de novo* standard of review unless *the plan* gives the fiduciary or administrator discretionary authority to determine the claimant's eligibility for benefits or to interpret the terms of the plan. *Hays*, 623 F. Supp. 2d at 842 (E.D. Ky. 2008) (emphasis added) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). When the plan gives the fiduciary or plan administration discretionary authority, an abuse of discretion standard of review applies. *Id.* The abuse of discretion standard is a considerably more deferential standard of review.

Here, Hartford has provided Davis with a direct citation to the administrative record, specifically the U.S. Bank Long Term Disability Group Benefit Plan. The plan should be all that Davis requires to determine if there is any delegation of discretionary authority as the standard of review is determined by the terms of the plan itself. Therefore, Davis should not require any further discovery on this matter. Plaintiff's Motion to Compel with regards to RPD 17 is **DENIED.**

### K. Organizational Structure of Disability Claim and Disability Appeal Unit

In Davis's RPD numbers 18 and 19, he requests that Hartford provide documents related to the organizational structure of its disability claims and disability appeals unit. (Docket No. 27 at 23.) Davis claims that these documents will assist him "in narrowing discovery to those persons actually involved with Mr. Davis's claims as well as assist in determining whether improper influence was placed on subordinates and/or whether the claims were afforded inordinate attention as compared with other similar claims." (Docket No. 27 at 24.) Davis also contends that the documents will show if Hartford has complied with the regulatory requirement that "decision makers are separate and distinct." (Docket No. 27 at 24.) Alternatively, Hartford argues that Davis's requests are not relevant and are also not narrowly tailored. (Docket No. 30 at 21.) Furthermore, Hartford argues that Davis does not need the documents to identify those persons involved with his claim as the employees involved in his claim were identified in the claims notes that were produced as part of the administrative record. (Docket No. 30 at

Davis correctly notes that the court in *Gluc* recently found that "the organizational structure of the claims and appeals units is fair game for discovery." 2015 WL 4746249, at *7 (citing a number of cases to support its position). Like the Court in *Gluc*, this Court agrees that Davis "is entitled to have a basic understanding of the organizational structure of both the claims and appeals units" of Hartford. This information will allow Davis to ensure that there is not substantial overlap in violation of 29 C.F.R. § 2560.503-1(h)(3)(ii) which mandates that the

employee who reviews an adverse benefits determination is not the same individual who made the adverse benefits determination that is the subject of the appeal nor is he or she the subordinate of such individual.

Davis's request is relevant, and the documents will be helpful in his determination of whether or not Hartford's decision makers are in fact separate and distinct. However, as the Court cautioned in *Gluc*, Hartford "is not required to produce every single document within its possession, custody or control that may touch in any fashion upon the structure of the claims unit and appeals unit." 2015 WL 4746249, at *8. 29 C.F.R. § 2560.503-1(h)(3)(ii) is meant to ensure that the same individual does not initially deny a claimant's benefits and then also consider the claimant's appeal. *Id.* Consequently, Hartford need only provide Davis with documents that identify the individuals along with their job titles in both the claims unit and the appeals unit at the time Hartford denied Davis's claim for benefits and his appeal of the adverse benefits decision. *Id.* Davis's Motion to Compel with respect to RPD 18 and 19 is **GRANTED.**

### L. Request for Depositions

Davis has requested that Hartford make available the two employees who signed his denial letters as well as a corporate representative under Rule 30(b)(6) of the Federal Rules of Civil Procedure for depositions. (Docket No. 31 at 13.) According to Davis, the requested depositions would involve his denial of benefits claim as well as his breach of fiduciary duty claim. (Docket No. 31 at 13.)

Hartford opposes Davis's requests for depositions. In regards to Davis's request to depose a corporate representative pursuant to rule 30(b)(6), Hartford argues that this Court should deny Davis's requests for two reasons. First, Hartford argues that Davis has not disclosed the topics on which he proposes to depose its witnesses. Second, Davis has not "identified any reason that would justify making an exception to the general rule that depositions are typically not permitted in ERISA cases." (Docket No. 30 at 22-23) (citing several decisions from outside the Sixth Circuit.) Concerning Davis's request to depose Hartford's employees involved with his

claim, Hartford states that Davis did not identify the individuals he wishes to depose. (Docket No. 30 at 23.) In his Reply to Hartford's Response, Davis narrows his proposed depositions to the two employees who signed his denial letters (Docket No. 31 at 13.) Hartford also argues that Davis provides no rationale for why the Court should allow him to depose the employees involved in his claim. (Docket No. 30 at 23.) Lastly, Hartford urges this Court to deny Davis's request because "the mental thought processes of the persons who decided Plaintiff's claim is not admissible or discoverable," and Davis has not provided a reason why the Court should make an exception to the general rule that depositions are not permitted in ERISA denial-of-benefit cases. (Docket No. 30 at 23.)

Our sister court has recently addressed this very request in *Gluc. See* 2015 WL 4746249, at *11-12. After reviewing an abundance of case law, the court in *Gluc* concluded that "the majority of courts to address this [request] have denied the efforts of defendant insurers to prohibit depositions in ERISA actions involving plaintiffs who allege that they were wrongfully denied disability benefits due to an inherent conflict of interest arising from the dual status of the defendant as both administrator and payor of disability claims." *Id.*

Here, Davis alleges that Hartford wrongfully denied his disability benefits due to an inherent structural conflict of interest. (Docket Nos. 1 at 2, 5; 31 at 2.) As this Court finds its sister court's analysis in *Gluc* persuasive, Davis's Motion to Compel Hartford to provide the aforementioned witnesses for depositions is **GRANTED**.

### M. Attorney's Fees

Davis also seeks attorney's fees and costs pursuant to Rule 37 of the Federal Rules of Civil Procedure. (Docket No. 27 at 27.) As the Court denied several of Davis's request in his Motion to Compel, the Court finds that Hartford's objections were substantially justified. *See* Fed. R. Civ. P. 37(a)(5)(A)(ii). Therefore, Davis's request for an award of attorney's fees and costs is **DENIED**.

**CONCLUSION AND ORDER**

For the reasons enumerated above, Plaintiff's Motion to Compel Discovery, (Docket No.

27), is **GRANTED** in part and **DENIED** in part.

cc: counsel of record