UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:14-CV-00507-TBR

RICHARD E. DAVIS                                                                         Plaintiff

v.

HARTFORD LIFE & ACCIDENT INSURANCE COMPANY                  Defendant

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon Defendant Hartford Life & Accident Insurance Company's ("Hartford") Motion for a Protective Order on Depositions and Objections to Plaintiff's proposed topics for its deposition of Hartford's corporate designee. (Docket No. 66.) The Plaintiff Richard Davis has responded, (Docket No. 70.), and Defendant has replied, (Docket No. 71). Fully briefed, this matter is ripe for adjudication. For the reasons enumerated below. The Court will GRANT Defendant's Motion for a Protective Order on Depositions and SUSTAIN in part and OVERRULE in part its objections to Plaintiff's topics for the deposition of Hartford's corporate designee.

**Factual Background**

This dispute arises from Defendant Hartford's denial of Plaintiff Richard E. Davis's disability benefits claim. (Docket Nos. 1 at 2; 27 at 1.) According to Davis, he stopped working in 2011 and "has remained continuously disabled and unable to function on a full time basis in any gainful employment." (Docket No. 1 at 2.) Hartford provided Davis with short term disability benefits from October 2011 through April 2012 and long term disability benefits from

1

April 2012 to April 2014. (Docket Nos. 1 at 2; 5 at 2-3.)  Following these two time periods, Hartford terminated Davis's disability benefits. (Docket No. 27 at 1.)

Davis vehemently disagrees with Hartford's decision to terminate his benefits. Davis contends that he is unable "to engage in full-time gainful employment." (Docket No. 1 at 2.) Davis states that his treating physician has diagnosed him with "multiple myeloma without remission . . . [and] chronic pain syndrome secondary to multiple compression fractures." *Id.* at 2-3. Davis alleges that according to his treating oncologist, "he is limited to sitting no more than [one] hour per day, standing or walking no more than [one] hour per day, with work activity limited to [one] hour per day." *Id.* at 3. Davis further states that his physician limited him to "lifting up to [ten] pounds infrequently." *Id.* Ultimately, Davis notes that his treating physician concluded he "is not capable of functioning in a sedentary work capacity." *Id.* (internal quotation marks omitted). Davis argues that he has and continues to satisfy the requirements of Hartford's long term disability insurance policy and, therefore, he is entitled to continue to receive monthly benefits. *Id.*

Following Hartford's termination of his benefits, Davis filed this action. Mr. Davis's Complaint asserts claims for Breach of Contract (denial of benefits), Breach of Fiduciary Duty, and Disgorgement. (Docket No. 1 at 5-7.) However, in its recent Memorandum Opinion and Order, this Court granted Hartford's Motion for Partial Judgment on the Pleadings as it determined that Mr. Davis's claims for breach of fiduciary duty and disgorgement fail as a matter of law. *Davis v. Hartford Life & Accident Ins. Co.*, No. 3:14-CV-00507-TBR, 2016 WL 1574151 (W.D. Ky. Apr. 19, 2016). Therefore, Mr. Davis's only remaining claim is for breach of contract.

Currently before the Court is the parties' dispute as to the location of the depositions in this case and the topics to be discussed at Mr. Davis's deposition of Hartford's corporate designee. (Docket No. 66 at 1.)

**Legal Standard**

As this Court discussed in a previous Memorandum Opinion and Order concerning an earlier discovery dispute between the parties, discovery in an ERISA denial-of-benefits action is substantially limited. *Davis v. Hartford Life & Accident Ins. Co.*, No. 3:14-CV-00507-TBR, 2015 WL 7571905, at *1 (W.D. Ky. Nov. 24, 2015) (citing *Likas v. Life Ins. Co. of N. Am.*, 222 F. App'x 481, 485 (6th Cir. 2007)). Generally, in an ERISA action, a "claimant may not seek discovery outside the administrative record." *Kasko v. Aetna Life Ins. Co.*, 33 F. Supp. 3d 782, 785 (E.D. Ky. 2014) (citing *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 618 (6th Cir. 1998)). However, while discovery is ordinarily confined to the administrative record, limited discovery outside of the record is permitted when it is "offered in support of a procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part." *Johnson v. Conn. Gen. Life Ins. Co.*, 324 Fed. Appx. 459, 466 (6th Cir. 2009) (citing *Wilkins*, 150 F.3d at 619 (Gilman, J., concurring)). Therefore, the Sixth Circuit limits discovery in ERISA actions but does not prohibit it. *Gluc v. Prudential Life Ins. Co. of Am.*, 309 F.R.D. 406, 411-12 (W.D. Ky. 2015).

With regards to limited discovery related to alleged bias, this Court has previously determined that the mere existence of an evaluator/payor conflict of interest is sufficient to permit discovery outside of the administrative record. *Davis*, 2015 WL 7571905, at *3. Consequently, this Court permitted limited discovery in this case because Mr. Davis makes an

3

allegation of bias against Hartford, and there is an inherent conflict of interest as Hartford was both the evaluator and payor of Davis's benefits. *Id.*

In its prior Opinion, this Court provided detailed parameters for the parties' discovery in this matter and cautioned that discovery is to be limited to Hartford's conflict of interest and Mr. Davis's allegation of bias. *See Davis*, 2015 WL 7571905, at *3-13. The parties have once again come to the Court to resolve their disputes over discovery related matters. At this time, the parties cannot agree as to the location of the depositions requested by Mr. Davis and the topics Mr. Davis seeks to cover in his deposition of Hartford's corporate designee pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure. (Docket No. 66 at 1.) This Court will address the merits of the parties' dispute below

## Discussion

### I. Location of Depositions of Hartford's Employees

Mr. Davis seeks to depose three of Hartford's employees in Louisville, Kentucky at his Counsel's office. (*See* Docket Nos. 61-63.) Hartford takes issue with Mr. Davis's proposed location as its employees are located in Minneapolis, Minnesota; Alpharetta, Georgia; and Hartford, Connecticut, and Hartford believes that Mr. Davis's counsel should travel to their locations to depose them. (Docket No. 66-1 at 6). Hartford also notes that Mr. Davis resides in Suwanee, Georgia and is quite a distance from Louisville, Kentucky himself. *Id.*

Generally, the party requesting the deposition "may set the place for the deposition of another party wherever he or she wishes" to do so. 8A Charles Alan Wright *et al.*, *Federal Practice and Procedure* § 2112 (3d ed.), Westlaw (database updated April 2016). If the opposing party disagrees with the proposed location, he or she may file a motion for a protective order to challenge the location. *Culver v. Wilson*, No. 3:14-CV-660-CRS-CHL, 2015 WL 1737779, at *2

(W.D. Ky. Apr. 16, 2015); Fed. R. Civ. P. 26(c)(1)(B). According to Rule 26(c)(1) of the Federal Rules of Civil Procedure, a party's motion for a protective order "must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." When good cause is shown by the moving party, a court "may . . . issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). In a protective order, the Court may specify the place where the deposition at issue is to occur. Fed. R. Civ. P. 26(c)(1)(B).

Here, Hartford has certified that it in good faith conferred with Mr. Davis's counsel, and the parties were unable to resolve their dispute without the Court's involvement. (Docket No. 66-1 at 3.) In support of its certification, Hartford has provided the Court with evidence that counsel for the parties conferred with one another prior to Hartford's filing its Motion for a Protective Order through both informal and formal means, and they were unable to reach an agreement as to the location of the depositions. (Docket No. 66-2 at 8-21.) Consequently, the Court must determine whether or not there is good cause to issue a protective order.

According to a recent opinion by a fellow court in the Western District of Kentucky, "[d]istrict courts of the Sixth Circuit have held that a rule has 'evolved' such that in federal litigation, in the absence of special circumstances, a party seeking discovery must go where the desired witnesses are normally located." *Culver*, 2015 WL 1737779, at *3 (quoting *Farquhar v. Shelden*, 116 F.R.D. 70, 72 (S.D. Mich. 1987)) (internal quotation marks omitted). "As a general rule, a plaintiff may be required to attend a deposition in the district where the case was filed, *but a defendant may insist on being deposed in the district where he resides.*" *Id.* (emphasis added) (quoting *Undraitis v. Luka*, 142 F.R.D. 675, 676 (N.D. Ind. 1992)). With regards to corporations,

"[t]he general rule is that the deposition of a corporation by its agents and officers should be taken at the corporation's principal place of business." *Id.* (quoting *Steppe v. Cleverdon*, 2007 U.S. Dist. LEXIS 54154, *5, 2007 WL 6831006 (E.D. Ky. 2007)). The purpose behind these general rules is that "the plaintiff chose the forum voluntarily, but the defendant is an involuntary participant in the litigation." *Id.* Furthermore, "[t]he purposes underlying these general rules create a presumption that there is good cause for a protective order when a deposition is noticed for a location other than the defendant's place of residence." *Pogue v. Nw. Mut. Life Ins. Co.*, No. 3:14-CV-598-CRS-CHL, 2016 WL 2343898, at *3 (W.D. Ky. May 3, 2016) (citing *Chris-Craft Indus. Prods., Inc. v. Kuraray Co., Ltd.*, 184 F.R.D. 605, 607 (N.D. Ill. 1999)). Given the aforementioned rationale, "district courts within the Sixth Circuit have developed a body of case law that favors deposing a defendant's employee in the employee's normal location." *Ryan v. Kentucky Department of Corrections*, 2016 U.S. Dist. LEXIS 37653, *3 (W.D. Ky. Mar. 23, 2016).

Here, the Court finds that there is no evidence of any "special circumstances" to overcome the general rule among Sixth Circuit district courts that "a party seeking discovery must go where the desired witnesses are normally located." *Culver*, 2015 WL 1737779, at *3. Hartford's employees that Mr. Davis seeks to depose work and reside in Minneapolis, Minnesota; Alpharetta, Georgia; and Hartford, Connecticut and, consequently, there is a presumption that Hartford has good cause for a protective order as Mr. Davis seeks to depose them in Louisville, Kentucky.

While Mr. Davis points to the convenience of the parties, the location of this Court, and the possible costs of taking depositions in more than one place to support his choice to hold depositions in Louisville, Kentucky, the Court is not persuaded that these factors constitute

special circumstances that would warrant an exception to the general rule. (Docket No. 70 at 4-8.) Concerning the convenience of the parties, Mr. Davis argues that Hartford has not shown that it would be anything more than a mere "inconvenience" for its employees to travel to Louisville and, therefore, Hartford has not met its burden and shown good cause. *Id.* at 5. Mr. Davis's argument is unsuccessful as there is a presumption that Hartford has shown good cause for its protective order because Mr. Davis seeks to depose Hartford's employees in a place other than their place of residence and the corporation's principal place of business. *Pogue*, 2016 WL 2343898, at *3. Therefore, it is Mr. Davis who must rebut such a presumption by demonstrating that special circumstances exist which warrant requiring Hartford's employees to travel. *See Culver*, 2015 WL 1737779, at *3. Concerning Mr. Davis's argument that the location of this Court weighs in favor of holding the depositions in Louisville, Kentucky, this Court finds such an argument unpersuasive as the parties can reach this Court by phone or other electronic means in the event that a dispute arises during the depositions and the parties require its assistance. Lastly, with regards to the cost of taking depositions, Mr. Davis argues that if the Court grants Hartford's request, "Hartford's counsel and Mr. Davis's counsel would be required to *waste* three days  (not including travel time) compared to just two days if the depositions proceed in Louisville." (Docket No. 70 at 4 (emphasis added)). Mr. Davis also contends that each party would incur greater hotel and airline expenses if the depositions are taken at the location of each individual deponent. *Id.* This may be inconvenient, but it does not constitute "special circumstances" sufficient to rebut the presumption that Hartford has good cause for its protective order or to warrant an exception from the general rule. Mr. Davis seeks to depose Hartford's employees and, consequently, he must be willing to expend the time and cost to do so.

7

Additionally, Mr. Davis contends that at a minimum Hartford's corporate designee chosen pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure should be required to travel to Louisville for his or her deposition. (Docket No. 70 at 7.) In support of this contention, Mr. Davis argues that Hartford should have to defend lawsuits in the Western District of Kentucky and bear the costs of litigation-related travel due to the fact that it is a large corporation and it engages in a significant amount of business in Kentucky. *Id.* at 7-9. The Court does not find these arguments persuasive. In a recent opinion involving a similar dispute and identical arguments made by Plaintiff's counsel, another court in the Western District of Kentucky reasoned that the arguments espoused by Mr. Davis must fail and explained the following:

> [I]ndividuals frequently sue corporations and seek to depose them pursuant to Rule 30(b)(6). If a difference in available funds for travel were sufficient to overcome the presumption, then the rule requiring depositions to take place at the corporation's principal place of business would never have arisen. Second, it is true that [the Defendant] conducts significant business in Kentucky . . . . Nonetheless, the general rule is that a Rule 30(b)(6) deposition takes place at the corporation's *principal* place of business, not at *any* place where the entity conducts business.
>
> [The Defendant's] size and financial resources do not compel a contrary result. . . . Put simply, the Court will not permit the parties' relative size and resources alone to control the outcome in disputes such as this. If adopted, the [Plaintiff's] argument would result in the party with fewer financial resources automatically having power to compel the party with greater financial resources to succumb to its choice of deposition locations, all the while with the latter picking up the bill. The Federal Rules of Civil Procedure and the case law applying them apply equally to all parties, regardless of their size or financial position. After choosing a lawsuit's forum, a plaintiff must adhere to the existing rules as the case moves forward. In this case, [the Plaintiff] is subject to the existing rule regarding the location of Rule 30(b)(6) depositions. Absent special circumstances, such depositions shall be conducted at the defendant's principal place of business.

*Pogue*, 2016 WL 2343898, at *3-4 (emphasis in original). In this action, Mr. Davis has failed to show that there are special circumstances which warrant conducting the deposition of Hartford's corporate designee in Louisville, Kentucky rather than Hartford, Connecticut, the corporation's principal place of business. As Mr. Davis has not successfully overcome the presumption of good cause for a protective order, the Court will GRANT Hartford's Motion for a protective order. Mr. Davis and his counsel are to depose Hartford's corporate designee in Hartford, Connecticut, the corporation's principal place of business and depose Hartford's other two employees in their respective places of residence, Minneapolis, Minnesota and Alpharetta, Georgia.

## II. Topics of Testimony For Corporate Designee

Hartford also disagrees with Mr. Davis's anticipated topics for the testimony of Hartford's 30(b)(6) witness. (Docket No. 66-1 at 7.) In his Notice of the 30(b)(6) Deposition, Mr. Davis outlined the following topics of testimony:

> 1) Hartford's claims practices and compliance with the ERISA claim regulations. *See* 29 CFR 2560.503-1.
> 2) Hartford's training of claims personnel to comply with the ERISA claim regulations.
> 3) Hartford's compensation, including bonus and incentive, practices for claims personnel.
> 4) Hartford's contracts, relationship, and statistical data involving medical review vendors MCN and UDC.
> 5) Hartford's claims unit organizational structure.
> 6) Hartford's responses to written discovery.
> 7) Hartford's answer and affirmative defenses.
> 8) Hartford's compliance with applicable insurance laws and regulations.
> 9) Hartford's reduction of monthly benefits by "Other Income Benefits."
> 10) Hartford's collection practices relating to "Other Income Benefits."
> 11) Hartford's earnings and profits for its disability claims unit, including its use of claim closure targets and tracking of reserves. *See e.g.* DNs 27-3 through 27-6.

(Docket No. 61 at 1-2.) Hartford disagrees with several of these anticipated topics and the parties are unable to agree to the topics despite the Court's extensive Order regarding discovery issued several months ago.

The Court granted depositions in this matter solely to allow Mr. Davis to inquire into Hartford's conflict of interest and alleged bias. Specifically, the Court followed the rationale and decision of our sister court in *Gluc*, 309 F.R.D. at 418-19. The court in *Gluc* concluded that "the majority of courts to address this [request] have denied the efforts of defendant insurers to prohibit depositions in ERISA actions involving plaintiffs who allege that they were wrongfully denied disability benefits due to an inherent conflict of interest arising from the dual status of the defendant as both administrator and payor of disability claims." *Id.* The scope of any possible topics of inquiry should be limited to Hartford's conflict of interest and potential bias. The Court will discuss each of the proposed topics about which the parties disagree below.

1. **Hartford's Training of Claims Personnel to Comply with the ERISA Claim Regulations**

Hartford objects to Mr. Davis's inquiry into its training of claims personnel to comply with ERISA claim regulations. In this Court's prior Memorandum Opinion concerning discovery, it did not directly address this issue. As Hartford points out, this Court did deny Mr. Davis's request to compel Hartford to produce the training material and manuals of the disability claims unit, as the Court determined that his request was "overly broad and [sought to acquire] information [he was] not entitled to discover" *Davis*, at 2015 WL 7571905, at *11. Hartford is also correct that generally "[b]ecause information regarding the training and qualifications of the reviewers is unlikely to lead to evidence concerning either the conflict of interest or bias, the plaintiff is not entitled to discovery on these issues." *Pemberton v. Reliance Standard Life Ins. Co.*, No. CIV. A. 08-86-JBC, 2009 WL 89696, at *4 (E.D. Ky. Jan. 13, 2009) (citing *Perlman v.*

10

*Swiss Bank Corp. Comprehensive Disability Protection Plan*, 195 F.3d 975 (7th Cir. 1999)).

However, the training and background information of reviewers that courts have considered undiscoverable as it is unrelated to bias includes inquiries into a reviewers' involvement in prior lawsuits or disciplinary actions, a reviewer's status as board-certified in a particular medical specialty, or a reviewer's treatment or lack thereof of patients in recent years. *Id.* Additionally, a reviewer's resume or curriculum vitae is not discoverable as it is unrelated to any possible conflict of interest or alleged bias. *Id.* Notably, this is not the type of information that Mr. Davis seeks in this matter. Mr. Davis seeks information specifically related to *Hartford's training* of its claims personnel to comply with the ERISA claim regulations, which is relevant to Mr. Davis's allegations of bias.

This Court is inclined to follow its sister court's decision regarding an interrogatory that involved a similar area of inquiry. *See Mullins v. Prudential Ins. Co. of Am.*, 267 F.R.D. 504, 519 (W.D. Ky. 2010). In *Mullins*, the claimant requested that the insurer describe its administrative procedures and safeguards "designed to ensure and verify that benefit claim determinations are made in accordance with governing plan documents, and that plan provisions have been applied consistently with respect to similarly situated claimants." *Id.* The court found that the insurer's response to the interrogatory was insufficient as it was vague and only generally referenced the existence of training for employees and quality review procedures. *Id.* The court determined that the claimant was "entitled to know specifically what training such claims professionals received relevant to the subject matter of the interrogatory and what quality review procedures are in place . . . and were used to ensure the fair and proper administration of [the claimant's] claim." *Id.*

As in *Mullins*, this Court believes that Mr. Davis is entitled to know what training Hartford's

claims personnel received regarding compliance with ERISA's claim regulations *as it pertains to his claim*. The Court cautions Mr. Davis's counsel that such questioning should be narrowly tailored to inquire into Hartford's training practices of its claims personnel to comply with ERISA's claim regulations as such training relates specifically to Mr. Davis's claim.

### 2. Hartford's Compensation, Including Bonus and Incentive, Practices for Claims Personnel

Hartford opposes Mr. Davis's proposed inquiry regarding Hartford's compensation, including bonus and incentive, practices for claims personnel. Hartford objects to this area of inquiry as it believes it is overbroad and will lead to questions about undiscoverable information. (Docket No. 66-1 at 8.) The Court provided detailed guidance in its prior Memorandum Opinion on this issue. *Davis*, 2015 WL 7571905, at *6. The parties are to follow this Court's prior ruling which states the following:

> District courts in the Sixth Circuit have developed a list of permitted areas of inquiry in ERISA discovery. *Busch v. Hartford Life & Accident Ins. Co.*, No. CIV.A. 5:10-00111, 2010 WL 3842367, at *4 (E.D. Ky. Sept. 27, 2010). The list includes information relating to "[i]ncentive, bonus or reward programs or systems formal or informal for any employees involved in any meaningful way in reviewing disability claims." *Gluc*, 309 F.R.D. at 413 (citation omitted). Just as courts have a list of areas of inquiry that are discoverable, courts also have a list of areas of inquiry that are not discoverable in ERISA actions. *Id.*; *see also Busch*, 2010 WL 3842367, at *4. One area of inquiry into which courts do not allow discovery is employee pay records. *Id.* (citations omitted).

*Id.* Consequently, Mr. Davis is not to inquire about the compensation paid to specific employees, as employee pay records are not discoverable. However, Mr. Davis may ask Hartford's corporate

12

designee about any incentive, bonus, or reward programs or systems that Hartford has for its disability claims personnel.

### 3. Hartford's Claims Unit Organizational Structure

Hartford objects to Mr. Davis's topic of inquiry concerning Hartford's claims unit organizational structure. The court in *Gluc* found that "the organizational structure of the claims and appeals unit is fair game for discovery." *Gluc*, 309 F.R.D. at 415 (citing a number of cases to support its position). This Court followed the *Gluc* court's position and agreed that Mr. Davis "is entitled to have a basic understanding of the organizational structure of both the claims and appeals units" of Hartford. *Davis*, 2015 WL 7571905, at *12 (quoting *Gluc*, 309 F.R.D. at 415). This Court reasoned that "[t]his information will allow Davis to ensure that there is not substantial overlap in violation of 29 C.F.R. § 2560.503-1(h)(3)(ii) which mandates that the employee who reviews an adverse benefits determination is not the same individual who made the adverse benefits determination that is the subject of the appeal nor is he or she the subordinate of such individual." *Id.* The Court also cautioned in its previous Order that Hartford "is not required to produce every single document within its possession, custody or control that may touch in any fashion upon the structure of the claims unit and appeals unit." *Id.* (citing *Gluc*, 309 F.R.D. at 415). This Court explained that "29 C.F.R. § 2560.503-1(h)(3)(ii) is meant to ensure that the same individual does not initially deny a claimant's benefits and then also consider the claimant's appeal. Consequently, Hartford need only provide Davis with documents that identify the individuals along with their job titles in both the claims unit and the appeals unit at the time Hartford denied Davis's claim for benefits and his appeal of the adverse benefits decision." *Id.* Given that Hartford has complied with the Court's instruction to provide documents that identify the individuals along with their job titles who reviewed Mr. Davis's

13

initial claim and his appeal, this Court agrees with Hartford that no further inquiry during the deposition of its corporate designee is needed or allowed into Hartford's claims unit organizational structure. (Docket No. 66-1 at 8.)

    4.  **Hartford's Reduction of Monthly Benefits by "Other Income Benefits" as well as its Collection Practices Relating to "Other Income Benefits"**

Hartford also objects to Mr. Davis's inquiry concerning its reduction of monthly benefits by "Other Income Benefits" and its collection practices relating to "Other Income Benefits." Hartford argues that "[t]he genesis of or general application of the Policy provisions relating to 'Other Income Benefits' has no bearing on the reasonableness of Hartford's claims decision in this case and has nothing to do with conflict of interest." (Docket No. 66-1 at 9.) Hartford also notes that it has not asserted a counterclaim against Mr. Davis "seeking to recover any overpayment of 'Other Income Benefits' so its 'collection practices' are irrelevant and outside the realm of relevant evidence here." *Id.* After reviewing the list of permitted areas of inquiry and given Hartford's arguments, this Court agrees with Hartford that this area of inquiry is not permitted and is not at all relevant to Hartford's conflict of interest or potential bias. Mr. Davis is not to inquire into Hartford's reduction of monthly benefits by "Other Income Benefits" or its collection practices relating to "Other Income Benefits."

    5.  **Hartford's Earnings and Profits for its Disability Claims Unit, Including its Use of Claim Closure Targets and Tracking of Reserves**

Hartford disagrees with Mr. Davis's proposed inquiry into matters relating to Hartford's earnings and profits for its disability claims unit, including its use of claim closure targets and tracking of reserves. (Docket No. 66-1 at 9.) Such an area of inquiry has never before been mentioned by Mr. Davis to the Court's knowledge, and he did not address Hartford's objection to this area of inquiry in his Response. (*See* Docket No. 70 at 11-13.) Mr. Davis's proposed area

14

of inquiry is not included among the well-established list of permitted topics of inquiry in an ERISA action developed by Sixth Circuit district courts. *See Gluc*, 309 F.R.D. at 413-14. Furthermore, this Court fails to see how Hartford's earnings and profits for its disability claims unit is relevant to Hartford's bias or conflict of interest. As such, Mr. Davis is not permitted to inquire into Hartford's earnings or profits for its disability claims unit during its deposition of Hartford's corporate designee.

## Conclusion and Order

For the aforementioned reasons, Hartford's Protective Order is **GRANTED** and its objections to Mr. Davis's proposed topics for his deposition of Hartford's corporate designee are **SUSTAINED in part** and **OVERRULED in part**. (Docket No. 66.)

cc: Counsel