UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CASE NO. 3:14-CV-507-TBR-LLK

RICHARD E. DAVIS,                                                                    PLAINTIFF

v.

HARTFORD LIFE & ACCIDENT INSURANCE COMPANY,                    DEFENDANT

---

**OPINION AND ORDER**

---

Senior Judge Thomas B. Russell referred this matter to Magistrate Judge Lanny King for resolution of discovery issues. (Docket # 51).

Plaintiff, Richard E. Davis ("Davis"), filed a Motion to Compel Defendant, Hartford Life & Accident Insurance Company ("HLAIC" or "Hartford"), to provide responses to his requests for production that were issued on August 23, 2017. (Docket # 95). Hartford filed a Response in opposition, arguing that Davis' request is untimely because discovery closed on March 31, 2017, and asserting that Davis seeks documents that were previously prohibited from being released in the Court's March 2017 Order regarding Davis' first Motion to Compel. (Docket # 97). Davis' Reply restates his position and addresses each of Hartford's arguments. (Docket # 99). Fully briefed, this Motion is ripe for adjudication. For reasons detailed below, Plaintiff's Motion to Compel is GRANTED IN PART and DENIED IN PART.

**Background**

At the heart of this dispute is a disagreement over additional requests for production made after both discovery and deposition deadlines had passed. Davis asserts a breach of contract claim, pursuant to the Employment Retirement Income Security Act of 1974

("ERISA"), in relation to Hartford's denial of his disability benefits.[1] (Docket # 1 at 2; 27 at 1). After deposing Hartford's 30(b)(6) witness, Davis requested additional documents for production. The Court held several status conferences and ordered Hartford to supplement its responses to Davis' request for production. After receiving Hartford's supplemented responses, Davis filed this Motion to Compel.

**Relevant Procedural Background**

On March 31, 2017, the Court held a telephonic status conference with the parties regarding discovery matters. (Docket # 83). The Court noted in the March 2017 Order that, upon information of the parties, Hartford had provided written discovery responses to Davis on March 29, 2017, the night before the call, and that Davis' counsel had not had time to review all of the responsive documents to determine whether a motion to compel was still necessary. (Docket # 83). The Court also noted that the parties had agreed that various depositions were not yet scheduled because they were contingent on Hartford's discovery responses. (Docket # 83). Thus, with respect to the discovery deadlines, the March 2017 Order provides, "[t]he discovery deadline of March 31, 2017 as set forth in the Agreed Scheduling Order (Docket # 74) shall be vacated and extended only for the purposes of completing depositions." (Docket # 83).

The Court held another telephonic status conference with the parties on April 17, 2017. (Docket # 84). In the April 2017 Order, the Court reiterated that "[t]he discovery deadline of March 31, 2017, as set forth in the Agreed Scheduling Order (Docket # 74) which was later vacated by this Court (Docket # 83), shall be extended only for the purposes of completing depositions." (Docket # 84). Additionally, the April 2017 Order provides that all depositions must be scheduled and completed no later than June 15, 2017. (Docket # 84). Davis deposed two

---

[1] Plaintiff initially asserted two other claims for breach of fiduciary duty and disgorgement. (Docket # 1 at 5-7). However, Senior Judge Thomas B. Russell granted Defendant's Motion for Partial Judgement on the pleadings, thereby disposing of those two claims. (Docket # 65).

of the witnesses before the June 15th deadline. (Docket # 85, 86, 87). However, the parties entered an agreed order to extend the deposition deadline for the 30(b)(6) witness to July 19, 2017. (Docket # 89). Davis deposed the 30(b)(6) witness on July 13, 2017 (Docket # 90) and subsequently issued to Hartford an additional request for production. (Docket # 95-1, 2).

Following Davis' additional written discovery requests, the Court held two telephonic status conferences. (Docket # 93, 94). During the second telephonic status conference on September 28, 2017, the Court ordered Hartford to supplement its responses to Davis' additional request for production and, if needed, directed Davis to file a Motion to Compel his requests for production. (Docket # 94). On October 23, 2017, Davis filed this Motion to Compel. (Docket # 95).

## Discussion

### A. Some of Davis' additional requests to produce are timely.

The initial issue is whether Davis' additional requests to produce are timely.

> District courts exercise extremely broad discretion in controlling discovery. Federal Rule of Civil Procedure 37 permits a party to move for an order to compel a complete response to properly submitted interrogatories or requests for production of documents. However, "[i]f a delay in moving to compel results in substantial prejudice to the party to whom it is directed, the district court may hold the requesting party has waived the right to compel a response."

*Hyland v. Homeservices of Am., Inc.*, No. 3:05-CV-612, 2012 WL 1680109, at *16-18 (W.D. Ky. May 14, 2012) (citations omitted). Generally, the discovery deadline specifies the date on which all discovery must be completed. *See Arnott v. Ashland Hosp. Corp.,* No. 0:15-CV-0032-DLB, 2016 WL 7974071, at *1 (E.D. Ky. Apr. 14, 2016) (discussing Fed. R. Civ. P. 33(b)(3) and 34(b)). However, courts have allowed discovery requests that would require responses after the close of discovery in certain circumstances. Indeed, this Court has broad discretion under the

rules of civil procedure to manage the discovery process. *Marie v. Am. Red Cross*, 771 F.3d 344, 366 (6th Cir. 2014).

Davis admits that the Court's March 2017 Order specifically provides that the discovery deadline of March 31, 2017 was extended only for the purposes of completing the depositions. Nevertheless, Davis contends that the surrounding circumstances and conversations that took place with the Court during multiple status conferences permitted him to issue the additional requests after the depositions were taken. Davis argues that he informed the Court during the status conferences that there may be additional discovery needed based upon the testimony from the depositions – specifically the testimony of Hartford's 30(b)(6) witness. Davis asserts that the Court agreed that additional discovery may be needed and necessary, but was not willing to completely reopen discovery. Thus, Davis contends that the Court entered an order directing the parties to complete the depositions with the understanding that Davis could seek additional discovery that may arise specifically out of the depositions.

Hartford responds that the Court's language in the March 2017 Order (Docket # 83) indicates that the Court made a deliberate decision not to extend written discovery, effectively concluding the written discovery phase of this case on March 31, 2017. Hartford argues that during the April 10 status conference, the parties discussed discovery deadlines but that the Court subsequently entered an updated scheduling order which confirmed that there were "no additional issues with Defendant's written discovery responses" and that the discovery deadline would be extended through June 15, 2017 but "only for the purposes of completing depositions." (*Id*. at 11-12) (quoting Docket # 84). Accordingly, Hartford asserts that the March 2017 Order clearly and strictly limited any remaining discovery to depositions. (Docket # 97, p. 11-14).

In this case, several status conferences were held in order to discuss the movement of discovery deadlines. Throughout the course of this litigation, the Court moved discovery deadlines by agreement of the parties. Although the Court was unwilling to re-open discovery and extend it, there was an understanding that new information and/or relevant and necessary information may be discussed during depositions that were not yet taken. In order to keep the discovery deadlines intact, this Court extended the discovery deadline for purposes of completing depositions with the understanding that Davis may seek additional discovery based on those depositions. Thus, the Court permits additional requests to produce on information that was discussed during the deposition(s).

Hartford asserts that the Federal Rules of Civil Procedure further prohibit Davis' tactics in trying to obtain a second bite at the written discovery apple. Hartford relies on Federal Rule of Civil Procedure 26(b), which provides that the court "must limit the frequency or extent of discovery… if it determines that… the party seeking discovery has had ample opportunity to obtain the information by discovery in this action." Fed. R. Civ. P. 26(b). Hartford contends that Davis has had ample opportunity to obtain discovery over the last two years and that the Federal Rules of Civil Procedure supports "shutting down any more delay and increase of costs in this fee-shifting litigation." (Docket # 97, p. 13, n.3).

However, over the course of the last three years, there have been numerous discovery disputes between the parties which have resulted in a delay of the discovery process. Indeed, Hartford filed a Motion for Protective Order on Deposition Notices after receiving the first set of deposition notices. (Docket # 66). Moreover, over the course of 2016 and 2017, Davis issued deposition notices to Hartford four separate times before Hartford's witnesses were actually deposed. (Docket # 61, 62, 63, 75, 76, 79, 80, 85, 86, 87, 90). Any "delay" that Hartford has

experienced from Davis' additional production requests may be faulted to both parties. Therefore, the Court finds that Davis' additional requests to produce, based on information learned in the depositions, are timely.

Additionally, Hartford argues that Davis' additional requests exceed the bounds of permissible ERISA discovery and the Court's prior November 2015 Order (Docket # 35)[2], are repetitive, and are too broad in both scope and time. Davis disagrees.

### B. Davis' requests to produce are granted in part and denied in part.

As the Court cautioned in the November 2015 Order, discovery in this case is to be limited to conflict of interest and allegations of bias. Docket # 35, p. 6. Appropriate areas of discovery include whether "(i) there is a history of biased claim denials; (ii) the employer has made measures to reduce bias and promote accuracy; and (iii) company policies reward or encourage denials." *Kasko v. Aetna Life Ins. Co.*, 33 F. Supp. 3d 782, 788 (E.D. Ky. 2014) (citing *Raney v. Life Ins. Co. of N. Am.*, No. 08–169–JMH, 2009 WL 1044891, at *3 (E.D. Ky. 2009)). This Court follows other courts in the Sixth Circuit, which have compiled a list of "permitted areas of inquiry—topics on which discovery related to an inherent conflict of interest may be had by an ERISA plaintiff." Docket # 35, pp. 6-7 (citing *Busch v. Hartford Life & Accident Ins. Co.*, No. CIV.A. 5:10-00111, 2010 WL 3842367, at *4 (E.D. Ky. Sept. 27, 2010)). This list includes:

> • "incentive, bonus or reward programs or systems formal or informal for any employees involved in any meaningful way in reviewing disability claims." *Myers v. Prudential Ins. Co. of Am.*, 581 F. Supp. 2d 904, 914 (E.D. Tenn. 2008).

> • "contractual connections between [plan administrator/payor] ... and the reviewers utilized in Plaintiff's claim ... and financial payments paid annually to the reviewers from the [administrator/payor]." *Pemberton v. Reliance Standard Life Ins. Co.,* No. CIV. A. 08-86-JBC, 2009 WL 89696, at *3 (E.D. Ky. Jan. 13, 2009).

---

[2] *Davis v. Hartford Life & Accident Ins. Co.*, No. 3:14-CV-00507-TBR, 2015 WL 7571905, at *3 (W.D. Ky. Nov. 24, 2015).

• "statistical data regarding the number of claims files sent to the reviewers and the number of denials which resulted." *Id.*

• "number of times the reviewers found claimants able to work in at least a sedentary occupation or found that claimants were not disabled." *Id.*

• "documentation of administrative processes designed only to check the accuracy of grants of claims (limited to claims guidelines actually consulted to adjudicate plaintiff's claims)."

Docket # 35, pp. 6-7 (citing *Gluc v. Prudential Life Ins. Co. of Am.*, No. 3:14-CV-519-DJH, 2015 WL 4746249, at *6 (W.D. Ky. Aug. 5, 2015) (quoting *Bird v. GTX, Inc.*, No. 08-2852-JPM-CGC, 2009 WL 3839478, at *3 (W.D. Tenn. Nov. 13, 2009)). Furthermore, specific categories of information that are not within the areas of permitted discovery are areas falling under the general category of reviewer credibility. *See* Docket # 35, p. 7. With this standard in mind, the Court moves on to the substance of the parties' dispute.

  **i.**    **No. 27. HLAIC's "Claims Excellence" Manual**

In request to produce ("RPD") number 27, Davis requests Hartford's "Claims Excellence" Manual. Hartford argues that Davis is seeking the same document that he unsuccessfully sought in the first Motion to Compel, which dealt with Davis' first set of requests to produce, numbers 2 and 3, in which Davis sought "[c]laim administration materials and manuals utilized by, or available to, the long term disability claims unit" as well as "[t]raining materials and manuals utilized by, or available to, the long term disability claims unit." (Docket # 97-12). In the November 2015 Order, the Court found that both of Davis' RPD numbers 2 and 3 were "overly broad and [sought] information Davis is not entitled to discover." Docket # 35, p. 20.

Davis contends that while the Court initially denied Davis' request for this information (Docket # 35), the Court "left open the door" for Davis to provide a more specific request. Davis argues that Hartford's 30(b)(6) witness identified the "Claims Excellence" Manual as the document that contained Hartford's policies and procedures. Although Davis concedes that the 30(b)(6) witness did not specifically state that those involved in the administration of Davis' claim and appeal referenced the "Claims Excellence" manual, Davis argues that the witness confirmed that those involved with Davis' claim were trained using the "Claims Excellence" and that the "Claims Excellence" Manual would necessarily inform employees on how to handle Davis' claim and appeal.

Contrarily, Hartford contends that the Court did not "leave the door open" for Davis to request a more specific manual. Hartford argues that the Court ultimately denied Davis' request and Davis never moved for reconsideration of this holding; therefore, the denial serves as the definitive law of this case and forecloses Davis' request. Further, Hartford asserts that the Court's prior discovery holding expressly cautioned that discovery into claims manuals was limited to materials "actually consulted" or relied upon in adjudicating the claim at issue. Hartford argues that Davis concedes, and has not proved, that Hartford actually consulted the "Claims Excellence" Manual in adjudicating Davis' specific claim.

Significantly, Hartford fails to cite to any case law that supports its position that once this Court finds that a request to produce is too broad to be enforced, the party is now foreclosed from requesting more specific documents. Indeed, as Davis points out, a narrow request may fit within the confines of ERISA discovery as well as the Court's prior November 2015 Order.[3]

---

[3] "While the request in (*Mullins v. Prudential Ins. Co. of Am.*, 267 F.R.D. 504 (W.D. Ky. 2010)) concerned information regarding the insurer's administrative processes and safeguards with respect to preventing bias in claims' decisions, Davis's request is not as narrowly tailored as he simply seeks all claim administration materials and manuals used by or available to employees in the disability claims unit. (Docket No. 27 at 19.) Davis's request

Nevertheless, the Court would reach the same conclusion whether or not Davis was ultimately foreclosed from requesting the "Claims Excellence" Manual. Davis is not entitled to the "Claims Excellence" Manual because he has not proven that it was used in conjunction with Davis' denial of claim and appeal. After review of the deposition transcript of Annette Moore, the 30(b)(6) witness, it is clear that the "Claims Excellence" Manual contains the policies and the standard procedures for ensuring Hartford Fire complies with ERISA claim regulations, and more specifically, denying claims for benefits. (Docket # 95-4, Moore Dep. 72:7-10; 78:7-13; 84:13-21). Moore also testified that the "Claims Excellence" Manual may be used as a reference tool for questions that may arise during claims handling and that employees train directly from the Manual. (Docket # 95-4, Moore Dep. 73: 7-11; 73:21-75:13). However, Moore did not testify that employees actually consulted with or used the "Claims Excellence" Manual in Davis' claim or appeal. As explained in the Court's previous November 2015 Order, an ERISA plaintiff, such as Davis, may obtain "documentation of administrative processes designed only to check the accuracy of grants of claims (limited to claims guidelines *actually consulted* to adjudicate plaintiff's claims)." Docket # 35, pp. 6-7 (emphasis added) (citations omitted). Therefore, Davis' Motion to Compel RPD number 27 is DENIED.

    ii.     **No. 28. Each contract/agreement between HLAIC and Hartford Fire Insurance Company ("Hartford Fire") relating to the administration of long-term disability claims.**

    iii.     **No. 29. Each contract/agreement between HLAIC and Hartford Fire Insurance Company relating to claims services, including the use of Hartford Fire employees, systems, and assets.**

In RPD numbers 28 and 29, Davis requests contracts and agreements between Hartford and Hartford Fire relating to the administration of long-term disability claims and the use of

---

does not simply seek the administration materials and manuals utilized by claims personnel regarding his claim nor does he seek just the information relevant to the proper adjudication of his claim." Docket # 35, pp. 19-20.

Hartford Fire employees, systems, and assets. Davis argues that, in order to sufficiently address the standard of review in briefing, Davis has and continues to seek information into the relationship between Hartford and Hartford Fire Insurance. Conversely, Hartford contends that that the temporal scope of the request is overly burdensome and intended to harass Hartford. Further, Hartford asserts that Davis has already obtained written discovery and testimony addressing this topic, including: sworn interrogatory statements, deposition testimony, and evidence in the Administrative Record.

Neither party cites to the fact that the Court already ruled on Davis' RPD number 17 in the first Motion to Compel. (Docket # 35, pp. 21-22). In RPD number 17, Davis requested "[e]ach document demonstrating any delegation of discretionary authority." Docket # 97-12. In response, Hartford pointed to the administrative record and referred Davis to U.S. Bank Long Term Disability Group Plan. Docket # 35, pp. 21-22. The Court denied Davis' Motion to Compel and held that Hartford provided Davis with a direct citation to the administrative record, which should have been sufficient to determine if there is any discretionary authority. *Id*. The Court specifically stated, "Davis should not require any further discovery on this matter." *Id*. The Court noted that

> "[t]he Supreme Court has held that courts are to review a claimant's challenge to his or her denial of benefits in an ERISA action under a de novo standard of review unless the plan gives the fiduciary or administrator discretionary authority to determine the claimant's eligibility for benefits or to interpret the terms of the plan. When the plan gives the fiduciary or plan administration discretionary authority, an abuse of discretion standard of review applies. The abuse of discretion standard is a considerably more deferential standard of review."

*Id*. (citations omitted).

In its Response to the Motion to Compel, Hartford points to sworn interrogatory responses that explained that Hartford Fire employees involved in Davis' claim were acting on

Hartford's behalf. (*See* Docket # 97-11, Ex. K, Third Supp. Interrog. Resp. No. 3[4]). Additionally, Hartford contends that Davis has sufficient evidence from which to determine the applicable standard of review. Hartford argues that it is undisputed that the Policy grants Hartford discretionary authority and Hartford has clarified that it is under the same corporate structure with employees of Hartford Fire acting on behalf of Hartford in connection with Davis' claim. Hartford also points to evidence in the Administrative Record that corroborates Moore's testimony and confirms that the decision-makers who adjudicated Davis' claim were acting as agents of Hartford, not Hartford Fire. (*See* Docket # 95-4, Moore Dep., 87:6-10).

Clearly, Hartford has provided Davis with several documents that show the discretionary authority as it relates to Hartford and Hartford Fire's relationship. This should be all that Davis requires to determine the standard of review. Therefore, Davis should not require any further discovery on this matter. As such, Davis' Motion to Compel with regards to RPD numbers 28 and 29 is DENIED.

      **iv.**        **No. 30. Claims settlement worksheet(s) concerning Mr. Davis.**

In RPD number 30, Davis requests a claims settlement worksheet, as it relates to Davis, which was generally discussed in Annette Moore's deposition. (*See* Docket # 95-4, Moore Dep. 96:1-24).

In response to Davis' RPD, Hartford generally objected to the request on the grounds that it was overly burdensome and harassing. Additionally, Hartford stated that Moore did not testify that such a document existed for Davis' claim or that such a document would be included in the claims file or administrative record for any claim. In response to Davis' Motion to Compel, Hartford reiterates its previous arguments. Additionally, Hartford argues that Davis has failed to

---

[4] "Defendant Hartford is a wholly owned subsidiary of HFIC (Hartford Fire). HFIC and Hartford exist under the same corporate structure and employees of HFIC were acting on Hartford's behalf in connection with Plaintiff's claim." Docket # 97-11, Ex. K, Third Supp. Interrog. Resp. No. 3.

show that the document exists and has failed to explain how this request is narrowly tailored to conflict of interest and bias. Hartford asserts that Moore's deposition testimony does nothing to support Davis' entitlement to the document nor does it demonstrate that a document actually exists with respect to Davis' claim. Lastly, Hartford explains that, in a good faith effort to narrow the discovery dispute, it undertook extensive efforts to confirm that no additional documents existed relating to Davis' claim that were not already produced as part of the Administrative Record. Hartford contends that no such claim settlement worksheet was uncovered.

In reply, Davis asserts that Hartford's Response Brief was the first time that Hartford has sought to deny the existence of a claims settlement worksheet. Davis argues that despite the requirements of the Federal Rules of Civil Procedure, specifically 34(b)(2)(C), Hartford did not previously state in its discovery responses whether responsive documents existed. Thus, Davis requests that the Court instruct Hartford to supplement its discovery responses and provide an affirmative statement under oath concerning this RPD.

Although a "claims settlement worksheet" sounds relevant, the parties have offered no description of what the worksheet actually contains. "Generally, parties in a civil action may obtain discovery regarding any unprivileged matter that is relevant to the claim or defense of any party. Docket # 35, p. 2 (citing *Likas v. Life Ins. Co. of N. Am.*, 222 F. App'x 481, 485 (6th Cir. 2007) (citing Fed. R. Civ. P. 26(b)(1)). Unlike discovery in most civil actions, discovery in an ERISA denial of benefits action is substantially limited. *Id*. In regards to this RPD, Davis has failed to carry his burden of explaining what is actually contained in this "standardize[d] form likely claims worksheet" and how it is relevant to his case. Indeed, during Moore's deposition, Davis only questioned Moore as to whether such document exists, and her response was that she was unsure. Docket # 95-4, Moore Dep. 96:1-24. Moreover, this issue is likely moot because

Hartford has already stated in its Response to Davis' Motion to Compel that such document, as it relates to Davis, does not exist. Therefore, Davis' Motion to Compel RPD number 30 is DENIED.

      **v.**      **No. 31. Each document referring to Mr. Davis that is not included in the administrative record HLAIC (Hartford) filed with the Court.**

In RPD number 31, Davis broadly requests all documents that refer to Davis, which were not included in the administrative record filed with the Court. Discovery requests seeking "any" or "all" relevant documents are often overbroad and vague. *See Myers v. Anthem Life Ins. Co.*, 316 F.R.D. 186, 209 (W.D. Ky. 2016); *Babcock Power, Inc. v. Kapsalis*, No. 3:13-CV-717-DJH-CHL, 2015 WL 9581850, at *5 (W.D. Ky. Dec. 30, 2015). In this case, Davis is not simply seeking all *relevant* documents that refer to him; he is seeking non-specific documents that refer to him. Davis is entitled to and has already received a copy of his entire claims file. He is not entitled to every single document that refers to him. Accordingly, Davis' Motion to Compel RPD number 31 is DENIED.

Additionally, the Court notes that it would deny this RPD even if Davis' request was narrow. As explained above, Davis was permitted to issue additional requests to produce based on *new* information that was provided during the depositions. Davis is not permitted to ask for additional documents that could have been requested at an earlier time. Hence, this request is also untimely.

      **vi.**     **No. 33. Each Turnaround Time ("TAT") report provided by UDC (University Disability Consortium).**

In RPD number 37, Davis requests each TAT report provided by UDC from 2009 until present. Davis contends, and deposition confirms, that the Turnaround Time Report "TAT Report" contains information that may be relevant to this lawsuit, including:

- "Office location of Claim Staff making the Referral;
- Name of Claim Staff making Referral;
  …
- Medical Consultant's name and Specialty type (if applicable);
- Date Referral was received at Vendor;
- Date Report was made available to The Hartford (e.g. email and / or Vendor's website);
- Total Charges for each Referral;
- Total time spent by Medical Consultant for review;"

Docket # 96-2, Ex. F, UDC Contract, p. 16. Further, Davis argues that Hartford has not provided him with the actual TAT reports or the other information contained therein (e.g. the total time the medical consultant spent on the review, the location and the name of claim staff that made the referral, etc.). Davis argues that he is entitled to these documents because the information is part of Hartford's and UDC's contractual arrangements, and the amount of time a reviewer spends on a particular claim is likely to shed light on the accuracy of the claims decision.

Contrarily, Hartford argues that the documents requested go far beyond the scope of discovery. Hartford contends that Davis does not offer any support for his assertion that the TAT reports sought are part of Hartford's "contractual connection" with UDC. Further, Hartford contends that the Court's prior November 2015 Order limited the "contractual connections" inquiry to only those reviewers who actually participated in the determination of Davis' claim. (*See* Docket # 35, pp. 14-15). In this case, Hartford argues that Davis is requesting each and every list from July 16, 2009 to present, regardless of specific claims or reviewing physicians at issue.

As explained above, discovery is permitted in areas relating to the "[c]ontractual connections between Hartford and the reviewers utilized in the plaintiff's claim, and financial payments paid annually to the reviewers from Hartford" as well as "[d]ocumentation of administrative processes designed only to check the accuracy of grants of claims (limited to

claims guidelines actually consulted to adjudicate plaintiff's claim)." Docket # 35, pp. 6-7. (citations omitted) (quotations omitted). Accordingly, Hartford should respond to RPD number 31 with the TAT report as it relates to Davis. However, Hartford is not required to provide documentation with regarding to the TAT reports pertaining to other claimants as those documents are not relevant to Davis' claims, and they would undoubtedly contain confidential information "that could not be produced without raising serious HIPAA and concerns that make production of such documents far more burdensome than potentially relevant." *Mullins v. Prudential Ins. Co. of Am.,* 267 F.R.D. 504, 522 (W.D. Ky. 2010). Therefore, Davis' Motion to Compel RPD number 33 is GRANTED IN PART.

      **vii.** **No. 32. Each list provided by UDC of its approved physician reviewers, identifying the reviewer by name and specialty.**

     **viii.** **No. 34. Documentation confirming for each physician used by UDC in relation to Mr. Davis' claim:**
         **a. was in "Active Practice";**
         **b. had "current malpractice insurance coverage";**
         **c. was "board certified";**
         **d. had no "complaints filed" "with any state licensing agency";**
         **e. was not "employed by an insurance carrier in any capacity";**
         **f. did not "derive more than 25% of his annual income" from "the performance of Medical Consultant Services or IMEs";**
         **g. held a "current, active license" "with no restrictions"; and**
         **h. was a "member in good standing of his local medical society."**

     **ix.** **No. 35. Documentation confirming for each physician used by UDC in relation to Mr. Davis' claim:**
         **a. a current curriculum vitae confirming all employment;**
         **b. "past malpractice history"; and**
         **c. "documented hours of direct patient care per month."**

     **x.** **No. 36. The quarterly reports from UDC containing the following information:**
         **a. "an updated listing of all Medical Consultants who meet The Hartford's qualification and credentialing criteria and are eligible to receive Referrals";**
         **b. "each Medical Consultant's name, professional designation, Specialty (if any), practice status";**

    c.  the **"count of each Specialty for which files"** were assigned;

    d.  the **"Active Practice percentage"** for each **Medical Consultant.**

In RPD numbers 32, 34, 35, and 36, Davis seeks information regarding the individuals who provided medical opinions in his case. In general, permitted ERISA discovery is limited to a search for evidence of whether the defendant's inherent conflict of interest affected a benefits decision. *Busch v. Hartford Life & Accident Ins. Co.*, 2010 WL 3842367, at *9. Davis argues that Hartford should respond to these requests because the information sought is used to ensure Hartford did not rely upon a physician in violation of its agreement with UDC, to ensure Hartford had the correct documentation necessary for the reviewers, and to confirm the reviewers met Hartford's credentialing requirements. Contrarily, Hartford argues that Davis' requests go beyond the scope of permissible conflict discovery. Additionally, Hartford contends that it has already provided Davis with the names, specialties, and statistical data concerning UDC physicians. (*See* Docket # 97-11, pp. 6-7; # 97-12, pp. 6-7). Furthermore, Hartford argues that the documents and information sought falls under the category of reviewer credibility, which was expressly prohibited in the Court's November 2015 Order on written discovery.

Indeed, Hartford already identified which reviewers were chosen by the UDC to handle Davis' claim in the responses to interrogatory 8. (*See* Docket # 97-11, p. 6). Furthermore, Hartford's Responses to Davis' initial requests to produce RPD numbers 21, 23, and 24, identified documents that corresponded with Davis' requests, which included contracts and agreements between Hartford and UDC as well as contracts and agreements between reviewers of Davis' claim and UDC. Davis could have requested additional and specific information about the UDC selected peer review physicians but chose not to do so. As stated above, Davis was permitted to issue an additional request to produce based on new information that was provided during the depositions. Davis is not permitted to ask for additional documents that could have

been requested at an earlier time. Accordingly, Davis' Motion to Compel RPD numbers 32, 34, 35, and 36 is DENIED.

Moreover, the Court would still deny these RPD numbers 34, 35, and 36 (except for 34(f) and 36(a)) on grounds that they unquestionably pertain to the credibility and professional backgrounds of the UDC reviewers. The Court previously declared in the November 2015 Order that this Court generally disallows discovery into matters involving the professional background of reviewers, which include "information such as the training and qualifications of the reviewers, whether the reviewers have faced criminal charges, civil suits, or disciplinary action, whether the reviewers failed to become board-certified, or whether the reviewers recently treated patients." Docket # 35, p. 7; *Busch*, 2010 WL 3842367, at *11-12; *see also Mullins v. Prudential Ins. Co. of Am.*, 267 F.R.D. 504, 514 (W.D. Ky. 2010). Information regarding the training and qualifications of the reviewers is unlikely to lead to evidence concerning either the conflict of interest or bias; therefore, Davis is not entitled to discovery on these issues. *See Pemberton v. Reliance Standard Life Ins. Co.*, 2009 WL 89696, at *4 (E.D. Ky. 2009).

Additionally, in regards to RPD numbers 34(f), and 36(a), the November 2015 Order addressed similar interrogatories and requests to produce (interrogatories 7-11, RPD 20-24) and ordered Hartford to "respond to the interrogatories with information concerning its contractual connections to the third parties and the financial payments paid to them annually along with information concerning any documentation of administrative processes designed only to check the accuracy of grants of claims." Docket # 35, p. 14. Hartford supplemented its responses to interrogatory 8 by providing that "UDC independently selected Dr. Rosaline Vasquez and Dr. Philip J. Marion." Docket # 97-11, p. 6. Hartford also produced the "Independent Medical Consultant Services Agreement between Hartford and UDC, which describes the terms of

Hartford's relationship with UDC." Docket # 97-11, p. 6. Hartford is not required to provide any response with regards to RPD numbers 32 and 36(a) because it already responded to similar requests. Furthermore, in these RPDs, Davis is requesting a list of *all* of the UDC-approved physician reviewers and UDC medical consultants who are eligible to receive referrals rather than a list of the reviewers who were utilized in Davis' claim. Lists of reviewers and medical consultants who did not actually participate in Davis' specific claim are not relevant in this case. Docket # 35, pp. 6, 14; *Pemberton*, 2009 WL 89696 at *3.

> xi. **No. 37. For each person involved with Mr. Davis' claim or appeal,**
> **provide the following:**
> **a. the person's name and employer;**
> **b. any contract/agreement between the person and HLAIC;**

> xii. **No. 38. Identify each person employed by HLAIC that was**
> **involved with the decision to terminate Mr. Davis' long-term**
> **disability benefits or to deny his appeal, and provide the following**
> **for each person:**
> **a. full name;**
> **b. job title at HLAIC;**
> **c. department at HLAIC;**
> **d. date of hire by HLAIC, and termination if applicable.**

In RPD numbers 37 and 38, Davis requests certain identifying information for each person involved in Hartford's decision to deny his claim for benefits and their contract and/or relationship with Hartford Fire. Notably, RPD numbers 37 and 38 are almost identical to Davis' first set of interrogatories, specifically Interrogatories 2[5] and 3[6]. The difference between the Interrogatories and RPD numbers 37 and 38 is that Davis is now also requesting the contract/agreement between the person and Hartford, as well as that person's department at Hartford and date of hire or termination, if applicable.

---

[5] Interrogatory no. 2. "Identify each person involved in the decision to deny Plaintiff's claim, including each person's name, address, occupation, current title and relationship to Defendant." (Docket # 97-11).
[6] Interrogatory no. 3. "Identify each person involved in the decision to deny Plaintiff's appeal, including each person's name, address, occupation, current title and relationship to Defendant." (Docket # 97-11).

Hartford argues that Davis has no basis for seeking this additional discovery because it has already provided Davis with written discovery and testimony addressing the fact that Hartford Fire employees that were involved in Davis' claim were acting on Hartford's behalf. Further, Hartford contends that it is undisputed that the Policy grants Hartford with discretionary authority and Hartford has clarified that it is under the same corporate structure with employees of Hartford Fire acting on behalf of Hartford in connection with Davis' claim.

Furthermore, Hartford contends that Davis seeks employment contracts and the employment history of those claims personnel involved with his claim (job title, department at Hartford, date of hire and/or termination). Hartford argues that it already provided responsive information regarding employment information relating to claims personnel in written discovery, and it has produced organizational charts detailing the claims and appeal units in place during Davis' claim and appeal. Further, Hartford asserts that the production of individual employment contracts and dates of hire and termination fails to relate to the narrowly allowed topic of conflict of interest discovery allowed by the Court in this case.

In response to the first set of interrogatories, Hartford identified various documents that corresponded with the information requested. Furthermore, the November 2015 Order directed Hartford to provide the identity, employer, and title of those involved in the denial of Davis' claim. Docket # 35, p. 9. Davis could have requested the contracts/agreements between each person and Hartford in his first set of interrogatories and requests to produce but chose not to do so. As stated above, Davis was permitted to issue an additional request to produce based on new information that was provided during the depositions. Davis is not permitted to ask for additional documents that could have been requested at an earlier time. Therefore, Davis' Motion to Compel RPD numbers 37 and 38 is DENIED.

**Attorney's Fees**

Both Davis and Hartford seek attorney's fees and costs pursuant to Rule 37 of the Federal Rules of Civil Procedure. (Docket # 95 at 22; Docket # 97 at 26). The Court granted in part and denied in part Davis' Motion to Compel. The Court finds that both of the parties' positions and objections were substantially justified. *See* Fed. R. Civ. P. 37(a)(5)(A)(ii). Therefore, Davis' request for an award of attorney's fees and costs is DENIED; and Hartford's request for an award of attorney's fees and costs is DENIED.

**CONCLUSION AND ORDER**

IT IS HEREBY ORDERED that Davis' Motion to Compel is GRANTED in part and DENIED in part as follows:

RPD number 27 is DENIED.

RPD number 28 is DENIED.

RPD number 29 is DENIED.

RPD number 30 is DENIED.

RPD number 31 is DENIED.

RPD number 32 is DENIED.

RPD number 33 is GRANTED IN PART.

RPD number 34 is DENIED.

RPD number 35 is DENIED.

RPD number 36 is DENIED.

RPD number 37 is DENIED.

RPD number 38 is DENIED.

IT IS FURTHER ORDERED,

Plaintiff's request for attorney's fees and costs is DENIED.

IT IS FURTHER ORDERED,

Defendant's request for attorney's fees and costs is DENIED.

IT IS SO ORDERED.

**Lanny King, Magistrate Judge**
**United States District Court**

c:      Counsel

January 9, 2018