UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

RICHARD E. DAVIS,                                    )
                                                     )
            Plaintiff,                               )         Civil Action No. 3:14-CV-507-CHB
                                                     )
v.                                                   )
                                                     )         **MEMORANDUM OPINION AND**
HARTFORD LIFE & ACCIDENT                             )              **ORDER**
INSURANCE COMPANY,                                   )
                                                     )
            Defendant.                               )
                              ***   ***   ***   ***

This matter is before the Court on the motion of Plaintiff Richard E. Davis ("Davis") to

strike the Declarations of Adam Garcia and Gail Gross [R. 119 (Redacted) Mot. to Strike; R. 120

(Unredacted) Mot. to Strike] attached to Defendant Hartford Life & Accident Insurance

Company's ("Hartford Life") Motion for Summary Judgment [R. 115-2, Ex. A, Garcia Decl.; R.

115-4, Ex. C, Gross Decl.].  Hartford Life responded and Davis replied. [R. 127; R. 135

(Redacted) Pl. Reply; R. 133 (Unredacted) Pl. Reply]  Thus, this matter is ripe for decision.  For

the reasons set forth below, the Court will **DENY** Davis's Motion to Strike.[1]

## I.      Background

This dispute arises from Hartford Life's denial of Davis's disability benefits claim. [R.

1, Compl.]  Hartford Life is the underwriter, insurer, and administrator of the long term

disability ("LTD") insurance policy at issue in this lawsuit. *Id.* ¶ 7.  Davis, a former U.S. Bank

employee, alleges that he stopped working in 2011 and "has remained continuously disabled

and unable to function on a full-time basis in any gainful employment." *Id.* at ¶ 9. Hartford Life

provided Davis with short term disability  benefits ("STD") from October 2011 through April

---

[1] Following the Background section, *infra*, and for convenience, when referencing material that appears  in both the redacted and unredacted versions of related filings, the Court will cite to the redacted version only.

2012 and LTD benefits from April 2012 to April 2014. *Id.* at ¶10; [R. 5, Ans., at ¶¶ 6, 10]

Following these two time periods, Hartford Life terminated Davis's disability benefits on April

18, 2014. [R. 5, Ans., at ¶ 8]  Davis filed this action pursuant to the Employee Retirement

Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132(e)(1), 1132(f), seeking

enforcement of the contractual terms of the LTD policy, to obtain past benefits, to receive

reinstatement for payment of future benefits, to obtain declaratory relief, other equitable relief,

and reasonable attorney's fees and costs. [R. 1, Compl., at ¶¶ 4, 40, 43, 48]

After protracted litigation and several orders from this Court touching on discovery

issues and dismissing certain claims from the Complaint, the Court entered an Order

establishing deadlines for dispositive motions. [R. 112]  The parties complied.  *See* [R. 113

(Redacted) Pl. Mot. Summ. J.; R. 114 (Unredacted) Pl. Mot. Summ. J.; R. 115, Def. Mot.

Summ. J.; R. 117 (Redacted) Pl. Resp.; R. 118 (Unredacted) Pl. Resp.; R. 122, Def. (Redacted)

Resp.; R. 123 (Unredacted) Def. Resp.; R. 129 (Redacted) Pl. Reply; R. 130 (Unredacted) Pl.

Reply; R. 132 (Redacted) Def. Reply; R. 133 (Unredacted) Def. Reply]  However, while the

parties' dispositive motions were pending, Davis filed the instant Motion to Strike, lodging

several arguments in support of striking the Declarations of Adam Garcia (the "Garcia

Declaration") and Gail Gross (the "Gross Declaration"), which Hartford Life attached in

support of its Motion for Summary Judgment.

**A.  The Garcia Declaration**

In his Declaration, Gross states that he is the Senior Director for Group Insurance

Claims on behalf of Hartford Life. [R. 115-2, Ex. A, Garcia Decl., at ¶ 1.]  His Declaration

describes the relationship between the various Hartford entities.  He states that the Hartford

Financial Services Group, Inc. ("HIG") is "a holding company that includes a family of

subsidiary and affiliate companies and does not transact any business. HIG's subsidiary and affiliate companies underwrite and sell a wide range of insurance products." *Id.* at ¶ 2. Hartford Life is one such entity that issues and underwrites, among other things, group LTD insurance policies. *Id.* at ¶ 3. Hartford Fire Insurance Company ("Hartford Fire") is another subsidiary of HIG, but according to Garcia, "does not issue or underwrite group or disability products." *Id.* at ¶ 4. Garcia explains that "[f]or administrative purposes, Hartford Fire pays the salaries of all of the employees of all of HIG's subsidiary and affiliate companies." *Id.* at ¶ 5.

The Declaration explains that Hartford Life issued the LTD policy involved in this lawsuit to U.S. Bank – Policy No. GLT-675173 ("the Policy"). *Id.* at ¶ 6. Garcia also clarifies that "[a]s the insurance carrier that issued the Policy, Hartford Life is responsible for the adjudication and payment of any claims for benefits arising thereunder." *Id.* at ¶ 7. This means Hartford Life is responsible for "the processes, procedures, manuals and/or best practices in place for the adjudication of LTD claims, including [Davis's] claim for benefits under the Policy." *Id.*

Next, the Garcia Declaration sheds light on the decision process that gives rise to this lawsuit. Garcia explains that "Special Investigation Unit Investigative Analyst Joseph Herman ("Herman") terminated [Davis's] claim for benefits under the Policy with the approval of Claims Department Team Leader Jeremy Hunt ("Hunt")[] and Appeal Specialist Mary Floyd ("Floyd") upheld that decision." *Id.* at ¶ 8. Garcia explains that at the relevant time, Herman, Hunt, and Floyd were "solely responsible" for adjudicating claims under insurance policies issued by Hartford Life. *Id.* at ¶ 9. Further, Herman, Hunt, and Floyd were "not responsible for adjudicating any claims under insurance policies issued by Hartford Fire" nor did they "hold themselves out as acting on behalf of Hartford Fire in any way." *Id.* According to

Garcia, these three individuals "handled and managed [Davis's] claims for benefits on behalf of Hartford Life, under the authority of Hartford Life, and pursuant to Hartford Life's processes, procedures, manuals, and best practices." *Id.* at ¶ 10. They were supervised by managers at Hartford Life, not Hartford Fire, and no individuals who were acting on behalf of Hartford Fire adjudicated or paid claims arising under the Policy. *Id.* at ¶¶ 11-12. In sum, Garcia states that Hartford Life "was solely responsible for the claim decision that forms the basis of this lawsuit." *Id.* at 13.

### B.  The Gross Declaration

In her Declaration, Gross states that she is the Clinical Practices Manager for Hartford Life and has held that position since 2011. [R. 115-4, Ex. C, Gross Decl., at ¶ 1]  In her Declaration, Gross addresses Hartford Life's "process for obtaining external medical reviews from third-party vendors" as well as various medical statistical information that supported a finding of whether Davis was disabled. *See id.* at ¶¶ 2-7. According to Gross, "external reviewers do not determine whether claims are paid or denied.  Rather, the Hartford [Life] claims analyst reviewing each claim considers the reviewing physician's opinion in conjunction with the relevant policy's terms and conditions, as well as many other considerations in a claims file, in reaching his or her decision as to 'disability'  under the relevant policy . . . [I]n making a disability determination, a claims analyst considers not only the review submitted by a particular physician, but all factual, medical, and vocational evidence submitted by a claimant or obtained by Hartford [Life] for a particular claim." *Id.* at ¶ 5.

## II.    Discussion

Davis moves to strike both Declarations for several specific (nearly identical) reasons. He first argues that the Court should not consider either Declaration because it must confine its

review of this ERISA denial decision to the administrative record. [R. 119, at pp. 1, 3-4, 13]

Next, Davis alleges that the "sham" affidavit doctrine supports striking both Declarations. *Id.* at

pp. 4-8, 14.  Finally, Davis urges the Court to strike both under the Federal Rules of Civil

Procedure. *See id*. at pp. 8-12 (alleging the Garcia Declaration should be stricken under Rule

56(c) and 37(e); 14-15 (alleging the Gross Declaration should be stricken under Rule 56(c)).

Before developing these specific arguments, Davis first attacks the validity of the two

Declarations in question on the basis that each contains a "material misrepresentation." [R. 119,

at pp. 2, 12]  As will be discussed next, once unpacked, this general argument is really an appeal

for the Court to undertake a *de novo* review of Hartford Life's decision to terminate Davis's LTD

benefits at the summary judgment stage.

### A.  Agency v. Employment

The "material misrepresentation" that Davis alludes to concerns the relationship each

Declarant has with Hartford Life.  He alleges that each Declarant "hold[s] [themselves] out to be

an employee of [Hartford Life]," but Davis contends that "in its deposition, [Hartford Life]

confirmed *it does not have employees*." [R. 119, at p. 2] (emphasis in original).  Therefore, these

Declarants cannot be employees of Hartford Life, as their statements suggest. *Id.*  Davis supports

this conclusion by pointing to the Rule 30(b)(6) testimony of Hartford Life, wherein its

representative testified in an indirect manner that it did not pay any employees. *See* [R. 119, at p.

2]  Thus, Davis's reasoning is as follows: on direct examination during its Rule 30(b)(6), Davis's

counsel asked Hartford Life's representative if she could identify "a single person that has been

employed by Hartford Life. . ." [R. 119-1, p. 5, lns. 19-24]   The representative responded in the

negative. *Id.*  The representative explained during this line of inquiry that Hartford *Fire* was the

entity responsible for paying certain individuals, including the administrators of Davis's claim.

Still, based on the answer of its corporate representative that Hartford Life had "no employees,"

Davis concludes the Declarations both contain material misrepresentations since these Declarants

are "holding [themselves] out to be employees" of Hartford *Life*. [R. 119, at p. 2, 12]

Davis's position on Hartford Life's employees (or lack thereof) is directly connected to

his argument concerning the standard of review he urges the Court to adopt in his Motion for

Summary Judgement. If Hartford Life had no employees, as his theory goes, then the

administrators that decided his benefits did not make that decision on behalf of Hartford Life, as

the Plan dictates it must. Instead, these administrators were acting on behalf of the entity that

paid their salaries – Hartford Fire. Davis makes this connection in this Motion to Strike and in

his Motion for Summary Judgment, maintaining that the administrators involved in his claims

were employed by Hartford Fire, *not* Hartford Life, and therefore were acting on behalf of

Hartford Fire, *not* Hartford Life. [R. 113, Pl. Mot. Summ. J., at pp. 31-32; R. 119, at pp. 2-2]

The distinction here is essential when determining the appropriate standard of review for the

cross motions for summary judgment. Under the Plan, Hartford *Life* was granted "full discretion

and authority to determine eligibility for benefits and to construe and interpret all terms and

provisions of the Group Insurance Policy." [Administrative Record ("AR") 33, 37, 46, 49].

Hartford Fire was not given any authority.

In ERISA actions, "a denial of benefits challenged under § 1132(a)(1)(B) is to be

reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary

discretionary authority to determine eligibility for benefits or to construe the terms of the plan."

*Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989). "When the plan vests the

administrator with discretion to interpret the plan . . . the court reviews the benefits denial under

the [more deferential] 'arbitrary and capricious' standard." *Corey v. Sedgwick Claims Mgmt.*

*Servs., Inc.*, 858 F.3d 1024, 1027 (6th Cir. 2017) (citing *Spangler v. Lockheed Martin Energy Sys., Inc.*, 313 F.3d 356, 361 (6th Cir. 2002)) (citation omitted). As argued more fully in the parties' cross motions for summary judgment, for the less exacting "arbitrary and capricious" standard of review to apply, Hartford Life must prove that the Plan expressly vested discretionary authority in an administrator and the administrator must have actually exercised that discretion. *See* [R. 113, Pl. Mot. Summ. J., at p. 31; R. 115, Def. Mot. Summ. J., at pp. 15-16] In his Motion to Strike, Davis argues that because the administrators that decided his benefits were employed by Hartford Fire, and not Hartford Life, the *de novo* standard of review is appropriate. The fact that the Declarations contain statements that conflict with this employment arrangement, then, becomes one of the primary reasons Davis moves to strike them. If they remain, and if the Court accepts the statements and the facts they contain, then it is likely that the Court will employ a more deferential standard of review when reviewing the administrators' decision to deny benefits in this case.

Davis's only support for his conclusion is the above referenced Rule 30(b)(6) testimony of Hartford Life, wherein its representatives allegedly testified that Hartford Life had "no employees." *See* [R. 119, at p. 2] Thus, Davis reasons that Hartford *Fire* employees exercised discretionary authority over him under the Plan. Stated differently, since Hartford Fire paid the administrators, and because the LTD policy did not authorize Hartford Life to delegate discretionary authority to another entity (Hartford Fire), pursuant to the applicable ERISA standard, the Court's review of these individuals' denial of Davis's benefits must be *de novo*. [R. 113, Pl. Mot. Summ. J., at pp. 32-33] Moreover, because these two Declarations contain this material misrepresentation, the remaining facts of each are called into question. [R. 119, at pp. 2, 13] Thus, because the two Declarations submitted in Hartford Life's Motion for Summary

Judgment are inconsistent with the employment arrangement that Davis sketches out, the Court should not consider them at all. *Id.*

In response, Hartford Life hones in on this central argument first, attacking the premise that simply because a parent corporation (Hartford Fire) pays an individual does not mean that individual lacks agency responsibility over the subsidiary (Hartford Life). [R. 127, at pp. 1-4] Hartford Life argues there is a distinction between agency as to particular decision-making actions and formal employment for administrative and tax purposes. *See id.* Most convincingly, Hartford Life supplies a list of authority where other courts, having been confronted with this exact issue, all decided that a defendant subsidiary with discretionary authority had made the final claims decision in the context of ERISA cases because the decision-making employees, though directly paid by the parent company, worked for the subsidiary (which otherwise had no formal employees), with regard to the claims at issue and expressly communicated with claimant on behalf of the subsidiary. *See* [R. 127, at n. 1] (and authority cited therein).

The Court agrees with Hartford Life on this issue. A review of the caselaw as well as the administrative record reveals that the individuals who were communicating with Davis and who were ultimately responsible for his claim under the Plan were representing the interests and decisions of Hartford Life, not Hartford Fire. The correspondence was even signed on behalf of Hartford Life and Accident Insurance Co. *See, e.g.*, [AR 0254-026 (Termination Letter from J. Herman); AR 0251-0252 (Appeal Notice Letter from J. Below)] All of this correspondence was sent from individuals who had "Hartford Life and Accident Insurance Co." listed just below their signature. *See id.*

This precise issue confronted the Fourth Circuit in *Griffin v. Hartford Life & Accident Ins. Co.*, 898 F.3d 371, 379–80 (4th Cir. 2018). There, upholding the district court's

determination that an "abuse of discretion" standard of review should apply to Hartford Life's administrators, the court said:

> The record plainly indicates that the individual decisionmakers involved with Griffin's claim were acting as agents of Hartford Life, such that Hartford Life, not Hartford Fire, determined that Griffin was no longer eligible for long-term disability benefits. All correspondence with Griffin was signed by individuals as employees of Hartford Life, and uncontested affidavits confirm that the employees involved with Griffin's claim were acting in that capacity. The only evidence suggesting that the relevant employees were instead employees of Hartford Fire was the W-2 tax forms indicating that Hartford Fire paid the employees' salaries. But, as Hartford Life explained, Hartford Fire was given the responsibility to pay *all of the employees* of subsidiary and affiliated companies in The Hartford group "for administrative purposes," and Hartford Fire was not involved in any of the underwriting, issuing of policies, investigations, communications, or decisions in this case.

*Id.* The court further noted that "numerous federal courts faced with similar factual circumstances have reached the same conclusion." *Id.* (citing *Potts v. Hartford Life & Accident Ins. Co.*, 272 F.Supp.3d 690, 704–06 (W.D. Pa. 2017)) (finding, in identical circumstances, that claim reviewers worked for Hartford Life even though they were paid by Hartford Fire); *Zurndorfer v. Unum Life Ins. Co. of America*, 543 F.Supp.2d 242, 256–57 (S.D. N.Y. 2008) (finding that claim reviewers were authorized agents acting on behalf of Unum America even though they were officially employed and paid by its parent company). So too has one court in this jurisdiction found. *See Owens v. Liberty Life Assurance Co. of Boston*, 184 F.Supp.3d 580, 585–86 (W.D. Ky. 2016) (finding that claim reviewers worked for Liberty Life even though they were paid by Liberty Mutual). The Court finds no reason to diverge from these results.

The Court finds the remaining arguments unconvincing and will address them briefly.

## B. The Administrative Record

Davis's first specific argument urges the Court to strike the Declarations because they are not a part of the official administrative record. [R. 119, at pp. 3-4, 13] When reviewing a

decision to deny ERISA benefits, the Court's review is confined to the administrative record as it existed on the date when the plan administrator issued its final decision upholding the termination of a claimant's benefits. *See Moon v. Unum Provident Corp.*, 405 F.3d 373, 378–79 (6th Cir. 2005) (citing *Wilkins v. Baptist Healthcare Sys.,* 150 F.3d 609, 615 (6th Cir. 1998)). However, when a plaintiff claims that his or her claims were denied because of procedural errors by the administrator, such as lack of due process afforded by the administrator or alleged bias on its part, the Court is not confined to the administrative record. *Huffaker v. Metro. Life Ins. Co.*, 271 F. App'x 493, 503–04 (6th Cir. 2008) (citing *Wilkins*, 150 F.3d at 618 (J. Gilman, concurring); *Kennedy v. Life Ins. Co. of N. Am.*, No. 3:15-CV-00741-CRS-DW, 2017 WL 2726701, at *2 (W.D. Ky. June 23, 2017) (considering declaration that was not filed as a part of the administrative record because court was asked to examine whether plan administrator committed procedural errors as a part of the underlying denial of claims).

Here, Davis is not just attacking the ultimate decision of Hartford Life; he attacks the procedure that Hartford Life's administrators used to reach this decision. *See* [R. 113, Pl. Mot. Summ. J., at pp. 33-36]  In his Motion for Summary Judgment, Davis alleges, among other procedural defects, that Hartford Life relied upon an independent medical examination that "it knew was altered." *Id.* This calls into question the very process and procedure that Hartford Life's administrators used when deciding his claim for LTD benefits.  Thus, because Davis is asking the Court to review this process, the Court is not limited in its review to the administrative record.  This argument fails.

## C. The Sham Affidavit

Next, Davis moves to strike the Declarations under the sham affidavit doctrine.  Under this doctrine, a party may not file an affidavit to oppose a motion for summary judgment that

contradicts his earlier sworn testimony. *France v. Lucas*, 836 F.3d 612, 622 (6th Cir. 2016) (citing *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986)).  If the affidavit directly contradicts prior sworn testimony, it should be stricken "unless the party opposing summary judgment provides a persuasive justification for the contradiction." *Id.* (citation omitted).  The rationale behind the doctrine is simple: "[i]f a party who has been examined at length [under oath] could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact."  *Id.* (quoting *Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969); *see Jiminez v. All American Rathskeller, Inc.*, 503 F.3d 247, 252 (3d Cir. 2007) (collecting cases).

As Hartford Life points out, however, this doctrine is inapplicable.  To start, "[t]he doctrine prevents *nonmoving* parties from creating an issue of material fact to defeat summary judgment by filing affidavits that contradict their own earlier deposition testimony . . ." and the Sixth Circuit has only expanded the doctrine to permit courts to disregard "an affidavit from one defendant, which directly contradicts his prior sworn testimony, submitted by the *plaintiffs* to defeat summary judgment motions from *other defendants*. . ." *Reed v. City of Memphis, Tennessee*, 735 F. App'x 192, 198 (6th Cir. 2018) (citing *France*, 836 F.3d at 623–24).  However, the doctrine "does not fit where the *moving* party files an allegedly contradictory affidavit with his or her motion for summary judgment." *Id.* (citation omitted).  Thus, the doctrine should be applied when a party seeks to avoid summary judgement, but the logic and purpose of the doctrine simply do not apply when "a party *moving* for summary judgment submits an allegedly contradictory affidavit with its summary judgment motion." *Id.* (emphasis in original).  This is so because a party moving for summary judgment "has no incentive to

create issues of fact that undermine his or her summary-judgment motion . . . .Moreover, for parties opposing summary judgment, extending the sham affidavit doctrine to require courts to strike contradictory affidavits filed by moving parties is a solution without a problem. If an affidavit conflicts with the deposition testimony of a summary judgment *movant*, the opposite party receives the *benefit* of the conflict under the requirement that evidence is construed in the light most favorable to the non-moving party." *Id.* (internal quotations marks and citations omitted). Here, Davis moves to strike the Declarations that Hartford Life submits in support of its own Motion for Summary Judgment, alleging that these Declarations contradict its earlier testimony. The sham affidavit doctrine is simply inapplicable on the facts presented here. The Declarations support Hartford Life's Motion for Summary Judgment; they were not attached to its Response to defeat Davis's Motion for Summary Judgment.

Further, and upon review of the testimony in question, the Court is satisfied that the attached Declarations are supplied merely to "fill the gaps" from incomplete sworn testimony, which Hartford Life is entitled to do. *See Aeral, S.RL. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 908 (6th Cir. 2006). The sham affidavit doctrine does not prevent a party from supplementing incomplete deposition testimony with a sworn affidavit. The Declarations at issue here certainly fall into this category concerning the testimony provided on the various Hartford entities' employment arrangement. The Court notes, however, that the lack of clarity concerning this arrangement appears to originate from Plaintiff's counsel's questioning, not from Hartford Life's

representative's answers.

The Court finds this argument unpersuasive.

**D.  No Personal Knowledge -Rule 56(c)**

Davis also argues that the Declarations should be stricken under Rule 56(c). [R. 119, at pp. 8-9, 14-14]  Davis contends that neither Declaration satisfies the "personal knowledge" requirement of Rule 56(c)(4). *See id.*

Pursuant to Rule 56(c)(4), "[a]n affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).  In the context of a corporation, the personal knowledge requirement of this Rule is somewhat different.  So long as the corporation selects a person "who can answer regarding information known or reasonably available *to the organization*" there is no "no obligation to select a person with personal knowledge of the events in question . . ." *Lloyd v. Midland Funding, LLC*, 639 F. App'x 301, 305 (6th Cir. 2016) (citing 8A Charles Alan Wright et al., Federal Practice and Procedure § 2103 (3d ed. 2015)) (emphasis in original).  Garcia's and Gross's Declarations were made on behalf of Hartford Life.  As corporate representatives, therefore, they are not required to have personal knowledge of the events described in the Declarations. *See id.*  Therefore, Davis's Rule 56 arguments fail.

**E.  Discovery Issues – Witnesses and Materials Not Disclosed – Rule 37(e)**

Finally, Davis asserts that Rules 26 and 37 require the Court to strike the Garcia Declaration at issue here. [R. 119, at pp. 10-11]  Davis states that Hartford Life never identified Garcia during discovery and Hartford "steadfastly refused to produce documents concerning the discretionary authority issue except for the U.S. Bank Long Term Disability Benefit Plan." *Id.*

In response, Hartford Life points to Rule 26(a)(1)(B)(i), which exempts actions for review on an administrative record from producing initial disclosures. Fed. R. Civ. P. 26(a)(1)(B)(i). Next, Rule 37 mandates that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Hartford Life argues that the provisions of Rule 26 discussed in Rule 37 are irrelevant here because there were no initial or pretrial disclosures in this ERISA action, since there is no trial date. [R. 127, at pp. 16-17] Moreover, the failure to identify Garcia here is both justified and harmless. *Id.* Hartford Life explains that it supplied the testimony of Annette Moore, its then Director of Appeals, to perform its Rule 30(b)(6) corporate representative deposition. *Id.* Ms. Moore no longer works for any of the Hartford entities, so Garcia's Declaration was supplied to fill in the gaps of Hartford Life's corporate representative. *Id.* The Court is satisfied with this response.

As a final note, the Court has already decided all discovery issues in this matter. Davis's attempts to re-open discovery based on Garcia's passing reference to the administrators' reliance on Hartford Life's processes, procedures, manuals, and best practices are unavailing. Garcia's Declaration does not discuss any substantive portions of these documents; he merely states the process that the administrators undertook when reviewing Davis's claims for LTD benefits. This argument fails.

Based on the above, and with the Court being otherwise sufficiently advised,

**IT IS HEREBY ORDERED** as follows:

1.	Plaintiff Richard E. Davis's Motion to Strike Declarations of Adam Garcia and

Gail Gross [**R. 119**; **R. 120**] is **DENIED**.

This the 12th day of August, 2019.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY

cc:	Counsel of record