UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| RICHARD E. DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:14-CV-507-CHB |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| HARTFORD LIFE & ACCIDENT | ) | **ORDER** |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | | |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court upon cross motions for summary judgment. [R. 113; R. 115] This case revolves around Defendant Hartford Life & Accident Insurance Company's ("Hartford Life") decision to cease providing Plaintiff Richard E. Davis ("Davis") with disability benefits under a plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132(e)(1), 1132(f). Hartford Life had previously provided Davis with Short Term Disability ("STD") benefits, as well as Long Term Disability ("LTD") benefits. Hartford provided these LTD benefits because it determined that Davis was disabled due primarily to spinal complications related to his multiple myeloma. However, Hartford later decided that Davis's disability no longer precluded him from "Any Employment" under the terms of the applicable insurance plan and ceased providing LTD benefits. For the reasons below, the Court will hold that Hartford Life's termination of benefits decision was proper, will **DENY** Davis's Motion for Summary Judgment and will **GRANT** Hartford Life's Motion for Summary Judgment on all claims.

## I. Statement of Undisputed Facts[1]

### A. The Benefits Plan

Davis was an employee of U.S. Bank and worked as a Senior Application Developer. [AR 550]  Hartford Life issued Group Insurance Policy GLT-675173 ("the Policy") to the U.S. Bank where Davis worked. [AR 004-052]  This Plan insured the LTD component of the employees' welfare benefit plan, which was established and maintained by U.S. Bank (the "Plan"). *Id.*  As part of his employment, Mr. Davis was insured under the LTD Policy – providing a monthly benefit of $4,461.35 in the event Mr. Davis became, and remained, Disabled through age sixty-six (66). *Id.* [AR 348]

U.S. Bank vested Hartford with full discretionary authority to construe and interpret the terms of the Policy and to determine eligibility for benefits thereunder as evidenced by the following language in the Policy: "We[2] have full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Group Insurance Policy." [AR 0033].  The Plan defined "Disability" and "Disabled" in the following manner:

1. during the Elimination Period, you are prevented from performing one or more of the Essential Duties of Your Occupation;
2. for the 24 months following the Elimination Period, you are prevented from performing one or more of the Essential Duties of Your Occupation, and as a result your Current Monthly Earnings are less than 80% of your Indexed Pre- Disability Earnings;
3. after that, you are prevented from performing one or more of the Essential Duties of Any Occupation.

[AR 034]  "Any Occupation" is defined as "an occupation for which you are qualified by education, training or experience, and that has an earnings potential greater than an amount

---

[1] All facts in this memorandum opinion are derived from the Administrative Record ("AR"), [R. 12-R. 13].  Citations to the administrative record are in the form of: [AR (page number) ].
[2] According to the Plan, "[w]e, us or our means the Hartford Life and Accident Insurance Company." [AR 037]

equal to the lesser of the product of your Indexed Pre-disability Earnings and the Benefit Percentage for which you enrolled and the Maximum Monthly Benefit shown in the Schedule of Insurance." [AR 0034]  Davis was responsible for submitting proof of continued disability under the Policy, which states:

> We will terminate benefit payment on the first to occur of:
> 1. the date You are no longer Disabled as defined;
> 2. the date You fail to furnish Proof of Loss, when requested by us . . . .

[AR 023]; *see also* [AR 0030] ("We may request Proof of Loss throughout Your Disability. In such cases, we must receive the proof within 30 days of the request.").

### B.  Timeline of Events

#### 1.  Hartford Life initially awards LTD to Davis

Hartford Life initially approved a STD request for Davis from October 2011 through April 2012. [AR 217-18]  In a letter dated November 16, 2011, the Hartford Life notified Davis that his STD benefits would expire on April 17, 2012. [AR 378-79]  The letter further notified Davis that if he expected his disability would extend beyond that, he was required to fill out and submit an LTD Income Benefits Questionnaire ("LTD Questionnaire"). *Id.*  When Davis returned the LTD Questionnaire, he informed Hartford Life that he had previously been out of work due to multiple myeloma which damaged his spine and caused back pain. [AR 1212-1213]

Davis' oncologist, Dr. Reddy, initially noted that his multiple myeloma was in remission and Davis was capable of sedentary and light-level work off and on between April 8, 2011 and January 2012. [AR 1879-82, 1918-33]  However, on February 7, 2012, Dr. Reddy informed Hartford Life that he was limiting Davis to working four (4) hours per day through at least September 2012. [AR 1868, 1873]  A Hartford Medical Case Management ("MCM") nurse concluded that the restriction and limitations were supported, though noted that Davis was

improving and should recover before the end of the STD benefits period. [AR 201]

Then, in April 2012, Dr. Reddy opined that Davis could only sit, stand, or walk a half hour at a time for a total of two (2) hours each of sitting or standing in a day and three (3) hours walking. [AR 1854] Because the physical exams in Dr. Reddy's office visit notes did not explain the decline in capacity as opposed to the expected recovery, Hartford obtained updated orthopedic office visit notes for additional information before referring the claim internally for a second medical review. [AR 0196, 1859-61] These notes indicated that Davis reported subjective levels of pain, but also that Davis declined an epidural injection; electing instead for further physical therapy. [AR 191] Hartford Life's MCM nurse noted that the subjective complaints were supported by abnormalities in the spinal MRI and it was reasonable for Davis to complete a round of physical therapy before returning to work. [AR 189] This nurse recommended updating the file after Davis was re-evaluated in September 2012. *Id.*

Based on its MCM nurse's recommendation and conclusions, Hartford Life approved LTD benefits for Davis by a letter dated June 28, 2012. [AR 187088, 0343-45] This letter also explained the definition of "Disability" under the Policy and that, after April 18, 2014, he would have to be disabled from "Any Occupation" as defined in the Policy. *Id.*

For the first twenty-four (24) months, the LTD policy defined "Disabled" as being unable to perform one or more of the essential duties of Davis' occupation. As a Senior Application Developer, Davis' job duties consisted of:

- Developing a working understanding of customers business needs in order to engineer software-based solution.
- Transforming the customer's requirements into technical specifications.
- Translating the technical specifications into a quality software product that meets or surpasses the requirements of the customer and conforms to all company and industry standards.

[AR 550]  The physical demands of Mr. Davis' occupation required him to work eight (8) hours per day, five (5) days per week, to sit for one (1) hour constantly and seven (7) hours in a workday. [AR 552]  He was not required to stand or walk. *Id.*

### 2.  Hartford Life continues to review Davis' claim

Hartford Life obtained Davis' updated office visits during the time he was receiving LTD benefits. [AR 180]  A note from July 2012 indicated that Davis was clinically stable, was not tender on exam, and was capable of sedentary and light-work.  [AR 1793-96]  Still, Dr. Reddy opined that his restrictions and limitations had not changed and would last at least another six (6) months. [AR 1793-96]  To resolve the inconsistencies between Dr. Reddy's statement and the office visit notes, a Hartford Life claims analyst referred the claim to its investigative unit to resolve the discrepancy. [AR 0177-78].  The investigative analyst set up three (3) rounds of surveillance, two (2) days each between October 2012 and March 2013. [AR 2073-75].  The surveillance observed Plaintiff walking a mile in fifteen (15) minutes on a recreation center track, walking quickly to his car after physical therapy, driving twenty-five (25) to thirty (30) minutes around town to run multiple errands over the course of about an hour, and sitting for thirty (30) minutes eating. [AR 2037-70].

The investigative analyst referred the file for follow up on the activities observed with an in-person interview with Davis, which occurred on March 18, 2013. [AR 1995, 2075]  When the investigator asked Davis about his physical capabilities, Davis reported as being able to walk slowly for up to twenty (20) minutes, to stand up to fifteen (15) to twenty (20) minutes, and to drive for up to twenty (20) minutes but only for one (1) errand at a time. [AR 1999-2003]  In his summary, the investigator noted that Plaintiff did not show any issues with concentration, confusion, or focus. [AR 2015]  Davis also provided the names of six (6) physicians who were

- 5 -

treating him. [AR 1996, 2075]    The surveillance and interview were not conclusive, leaving

several discrepancies between observed and reported ability, so the investigative analyst obtained

updated medical records from the physician list Davis provided and referred the claim to an

MCM nurse for resolution of the medical questions. [AR 0159, 2075-76]  Moreover, Davis

continued to report subjective complaints of pain during visits with his treating physicians in

early 2013. *See* [AR 1724-26, 1717, 1656-1662]  Still, Davis' neurologist, Dr. Cooper, reported

that Davis' neuropathy had improved with physical therapy. [AR 1624-26, 1646-51]

     Therefore, in May 2013, the MCM nurse also sent letters to all of Davis' treating

physicians, enclosing the surveillance and in-person interview discussed above, asking whether,

considering that information and their own medical findings, they would agree that Davis could

sit for the majority of an eight-hour day, up to an hour at a time with an option to sit or stand as

needed, stand or walk briefly and intermittently throughout an eight-hour day, lift or carry up to

ten pounds occasionally, and use his upper extremities without restriction. [AR 157, 275-84]

The results were slightly mixed.  Davis' gastroenterologist responded that he did not know, since

he had only treated Davis for stomach pains and had not considered his ability to work. [AR

1534]  Davis' orthopedist, Dr. Willett, failed to respond at all. [AR 147]    Davis' primary care

physician, Dr. Goyco, and neurologist, Dr. Cooper, both concluded that he could perform full-

time under those restrictions and limitations. [AR 1536-37, 1576-77]  However, Davis'

oncologist, Dr. Reddy,  responded that he did not believe Plaintiff could perform under those

restrictions and limitations due to back pain. [AR 1579-80]  Despite numerous requests from

Hartford Life's claim management team to address the opinions of Dr. Goyco and Dr. Cooper

and clarify his opinion with the apparently conflicting office visit notes stating that Davis could

perform sedentary work, Dr Reddy never responded. *See* [AR 152, 270, 147]

Given the lack of uniformity among Davis' treating physicians and the lack of Dr. Reddy's response, Hartford Life then referred the file to an independent vendor to obtain an in-person independent medical examination ("IME") to address restrictions and limitations on sitting, standing, walking, and use of the upper extremities, as well as the discrepancy between Dr. Reddy's office visit notes and his response to Hartford's letter. [AR 1533]  Dr. Frederich P. Wener, a physician board certified in Orthopedic Surgery, was retained to evaluate Davis' medical records and to conduct an examination. [AR 1516-20]  In his report, dated July 31, 2013, Dr. Wener indicated that he was unable to review surveillance videos and offered conflicting conclusions regarding Davis' ability to sit, stand, and walk.[3] *Id.*  After sending the surveillance video, Hartford Life inquired whether the video changed Dr. Wener's opinion. [AR 131-32]  He concluded that it did not. [AR 1512]  Seeking clarification of the discrepancy between the restrictions and limitations on pages 4 and page 5 of the report, Hartford requested an additional report from the IME vendor. [AR 128]  The IME vendor responded on October 17, 2013 with an updated report, itself dated July 31, 2013 with revisions from August 19, 2013. [AR 1502-08]  In this update, the IME vendor concluded that Davis could sit, stand, and walk for one (1) hour at a time each, for three (3) hours each per eight (8) hour work day. [AR 1502-08]  Hartford Life's MCM nurse then contacted the IME vendor to clarify the correct report and restrictions and limitations, and was informed that the revised report received on October 17, 2013, was the correct version, retyped with the permission of Dr. Wener "to accurately reflect what [he] felt to be [Davis'] current, maximum level of physical function." [AR 119]  Hartford Life then shared

---

[3] For example, Dr. Werner opined that Davis could only sit for thirty (30) to forty (40) minutes at a time, but could also sit, stand, and walk for one (1) hour at a time each for three (3) hours per each eight (8) hour work day. *Id.*

the updated report with Dr. Reddy, again seeking his comment, but Dr. Reddy again failed to respond. [AR 118-19, 0261]

### 3. Hartford Life terminates Davis' LTD benefits following change to "Any Occupation" Coverage

Hartford Life then sent Davis a letter, dated October 24, 2013, in which he was notified that Hartford Life would be conducting an investigation into whether he would remain disabled beyond the change from "Own Occupation" to "Any Occupation" per the Plan's gradual evaluation of "Disability" discussed *supra*. *See* [AR 034, 262-63]

Based on the findings of Dr. Goyco, Dr. Cooper, and Dr. Wener that Davis was capable of full-time sedentary and light ability, Hartford Life obtained an Employability Analysis Report (the "Employability Report") from one of its rehabilitation counselors. [AR 1472-72]  The Employability Report relied on the agreement of Davis' treating and consulting physicians who found that he was capable of full-time sedentary or light work, and also incorporated Dr. Wener's further limitations on sitting, standing, and walking to one (1) hour at a time each for three (3) hours total each per eight-hour day. [AR1472]  This Employability Report identified five (5) occupations for which Davis would be suitable, each of which accommodated Davis' restrictions and limitations, fell within the "closest" or "good" match categories given his occupation, and that would exceed the Policy's earning requirements. [AR 1473, 1478]

Hartford Life considered Dr. Reddy's disagreement with the conclusions presented, but ultimately decided that all the other treating and consulting physicians who responded to its requests agreed that Davis did have full-time capability with certain restrictions and limitation. [AR 113-14]  While the conclusions reached would not allow for Davis to return to his own former occupation as a Senior Application Developer, these conclusions did support a finding that Davis could return to work at other identified occupations. *Id.*  Thus, in a letter dated

December 5, 2013, Hartford informed Plaintiff that it determined he would not meet the definition of "Disability" under the Policy once it changed on April 18, 2014. [AR 254]

### 4. Davis Appeals Hartford Life's LTD determination

Counsel for Davis appealed Hartford Life's LTD termination decision in a letter dated April 15, 2014. [AR 1460-63]  Enclosed in this letter, Davis's counsel included a medical statement and records from Dr. Reddy that had been updated through November 2013. [AR 1163-75]  According to the statement from Dr. Reddy, Davis suffered from "multiple myeloma w/out remission," fatigue with mild anemia, and chronic pain syndrome and provided very restrictive limitations, which meant Davis could sit, stand, and walk for a total of *only* one (1) hour per day; that he would have to rest thirty (30) minutes after every hour of work; that he could only use his upper extremities occasionally; and that he would need to miss up to 30 days of work per month. *Id.*

After receiving the appeal, Hartford Life sought to update its files with Dr. Reddy's most current medical records. *See* [AR 091-94, 098, 249]  From these updated records, Hartford Life learned that Davis's multiple myeloma was stable and under observation, that he had some mild anemia with mild fatigue to be monitored, and his back pain "being well controlled with his current pain regimen." [AR 050]  The most recent note indicated that Davis's anemia had normalized, but that he continued to report fatigue and back pain, with the back pain "currently controlled with his pain regimen" and there were no increase in pain symptoms. [AR 504]  Hartford Life also received additional documents from Dr. Wener through Davis's counsel in May 2014 concerning Dr. Wener's communications with the vendor about Davis's IME report. [AR 436-499]  Though these additional documents from Dr. Werner contained typos, inconsistencies, and had certain pages missing, overall they were consistent with the previous

information about the IME process. [AR 434, 444-84, 455]  Through much back and forth

between Dr. Wener and the vendor, who sought continual confirmations and clarifications, the

version that was provided to Hartford Life as the final report on October 17, 2013 confirmed that

in Dr. Wener's opinion, Davis could sit, stand, and walk, for one (1) hour each at a time for a

total of three (3) hours per eight-hour day. [AR 0490]  Hartford Life notified Davis that based

upon Dr. Wener's documents, the appeal was considered complete upon receipt of this new

information. [AR 242-43]

At this time, Hartford Life sought an additional independent review by pain management

specialist and internist through a vendor, who analyzed the medical records supplied to Hartford

Life for Davis's appeal. [AR 413-33]  Dr. Philip J. Marion, board certified in Physical Medicine

and Rehabilitation and Pain Medicine, spoke with Dr. Reddy on June 3, 2014. [AR 419]  During

this meeting, Dr. Reddy opined that Davis's multiple myeloma was in remission, that he had no

objection to Plaintiff resuming full time work at the light to sedentary occupation level, and that

he was not aware of any medication-related cognitive deficits and was not restricting Plaintiff's

driving. *Id.*

Dr. Marion and Dr. Rosaline Vasquez (a board-certified internist) both concluded that

Davis would likely continue to have mild anemia as a result of his multiple myeloma, but that it

would not preclude him from resuming light or sedentary occupation. *See* [AR 420, 432]  Both

physicians agreed that the medical records and through their conversations with Davis's

oncologist, Dr. Reddy, that Davis's medications sufficiently controlled his pain to allow him to

work a full-time occupation and there was no evidence of cognitive issues that would limit his

driving or working. [AR 420-21, 432]  Dr. Vasquez concluded that Davis's multiple myeloma,

neuropathy, cognitive function, and anemia would not require functional limitations, but noted

that his medications suggested that he not use heavy machinery or work at heights. [AR 432-33]

Dr. Marion concluded that, as of April 18, 2014, Davis could work a primarily sedentary

occupation, sitting without restriction except to stand or walk five (5) to ten (10) minutes after an

hour of sitting. [AR 421]  However, he concluded that Davis would need to sit for five (5)

minutes after standing or walking for thirty (30) continuous minutes and should not stand or

walk more than two (2) hours in an eight-hour day. [AR 0421]  He also noted that there were no

restrictions on the use of Davis's upper extremities but that lifting, pushing or pulling should be

limited to no more than ten (10) pounds. [AR 0421]

    Hartford Life determined that these findings of additional restrictions warranted an

updated Employability Report. [AR 082]  This updated Employability Report noted five (5)

occupations in the "closest" match category – including Davis's previous occupations – which

Davis could perform and which would exceed the Policy's earnings requirement. [AR 386-87]

The Employability Report noted that the Policy did not require that the positions be readily

available in the labor market within an hour drive of Davis. [AR 387]

    In a letter dated June 19, 2014, Hartford Life notified Davis that it was upholding its

earlier termination decision. [AR 236-41]  Hartford Life's letter summarized the initial review

process before directly addressing the issues raised in Davis's appeal. [AR 237-38]  In response

to Davis's assertion that his multiple myeloma was not in remission and was causing fatigue and

anemia, Hartford pointed to Dr. Reddy's office visit notes to the contrary. [AR 238]  In response

to the assertion that the ability to sit, stand, and walk three (3) hours in an eight-hour day was not

full-time employment, Hartford Life pointed out Plaintiff's misunderstanding that the restrictions

and limitations were actually three (3) hours *each* over the course of an eight-hour day. [AR

0238] (emphasis added).  Hartford Life also explained that the Employability Report was not

flawed because Davis was "fully qualified and possessed transferable skills for all of the occupations listed" and the Policy does not require that the occupations be "readily available" within an hour's drive of Davis. [AR 238]  The letter also noted that Davis's primary care physician, Dr. Goyco, and neurologist, Dr. Cooper, disagreed with Dr. Reddy that Davis was disabled. [AR 238]  Next, Hartford Life set out the opinions of Dr. Marion and Dr. Vasquez, including the discussion with and ultimately confirming opinion of Dr. Reddy, and the conclusions of the updated Employability Report. [AR 239-41]  Based on all of the evidence, Hartford Life found that Plaintiff was not  "Disabled" from "Any Occupation" as of August 18, 2014, and therefore benefits were not payable after April 17, 2014. [AR 241]

Davis initiated this action for benefits on July 16, 2014 under 29 U.S.C. § 1132(a)(1)(B) as well as a breach of fiduciary duty claim under 29 U.S.C. § 1132(a)(3) and a claim for disgorgement under 29 U.S.C. § 1132(a)(1)(B) and (a)(3). [R. 1, Compl.]  However, on April 19, 2016, this Court dismissed Davis' claims for breach of fiduciary duty and disgorgement, leaving on the claim for benefits under 29  U.S.C. § 1132(a)(1)(B). *See* [R. 65, Mem. Op. and Order, at p. 7]

## II.    Standard of Review

The Court has addressed which standard of review is appropriate at the summary judgment stage in its previous Memorandum Opinion and Order. *See* [R. 139, at pp. 5-9] Therefore, only brief mention of the applicable standard of review is necessary here.

In ERISA actions, "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).  "When the plan vests the

administrator with discretion to interpret the plan . . . the court reviews the benefits denial under the [more deferential] 'arbitrary and capricious' standard." *Corey v. Sedgwick Claims Mgmt. Servs., Inc.*, 858 F.3d 1024, 1027 (6th Cir. 2017) (citing *Spangler v. Lockheed Martin Energy Sys., Inc.*, 313 F.3d 356, 361 (6th Cir. 2002)) (citation omitted).

The arbitrary and capricious standard is "the least demanding form of judicial review of administrative action. When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Shields v. Reader's Digest Ass'n, Inc.,* 331 F.3d 536, 541 (6th Cir. 2003) (quotation marks and citation omitted). The arbitrary and capricious standard requires the Court to review the Plan provisions and the record evidence and determine if the administrator's decision was "rational." *Id.* Although the evidence may be sufficient to support a finding of disability, if there is a reasonable explanation for the administrator's decision denying benefits in light of the plan's provisions, then the decision is neither arbitrary nor capricious. *Williams v. Int'l Paper Co.,* 227 F.3d 706, 712 (6th Cir. 2000). Yet the deferential standard of review does not mean the Court should "rubber stamp[ ]" the plan administrator's decision. *Schwalm v. Guardian Life Ins. Co. of Am.*, 626 F.3d 299, 307–08 (6th Cir. 2010) (citation omitted). Instead, a decision reviewed according to the arbitrary and capricious standard must be upheld if it results from "a deliberate principled reasoning process" and is supported by "substantial evidence." *Baker v. United Mine Workers of Am. Health & Ret. Funds,* 929 F.2d 1140, 1144 (6th Cir. 1991).

In order for the less exacting "arbitrary and capricious" standard of review to apply, Hartford Life must prove that the Plan expressly vested discretionary authority in an administrator and the administrator must have actually exercised that discretion. *Shelby Cty. Health Care Corp. v. Majestic Star Casino*, 581 F.3d 355, 365, 367 (6th Cir. 2009)

(administrator must actually exercise discretion and cannot delegate decision to others). Here, Hartford Life has met its burden. As discussed above, the Plan granted Hartford Life "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Group Insurance Policy." [AR 33, 37, 46, 49] Second, as explained more fully in the Court's previous Memorandum Opinion and Order, Hartford Life, as the administrator of the Plan, was the entity that exercised this discretion in determining Davis's disability claim. [R. 139, at pp. 5-9] Having resolved the factual issue of "who actually made the benefit determination," the Court finds that the deferential review should apply to the decision to deny Davis's benefits. *Majestic Star Casino*, 581 F.3d at 365, 367. Accordingly, under Sixth Circuit jurisprudence, the Court's review must defer to the administrator's underlying decision if "it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome." *Judge v. Metro. Life Ins. Co.*, 710 F.3d 651, 657 (6th Cir. 2013) (quoting *Davis v. Ky. Fin. Cos. Ret. Plan*, 887 F.2d 689, 693 (6th Cir. 1989)). The court will therefore uphold Hartford Life's benefits determination if it is "rational in light of the [Plan's] provisions." *Judge*, 710 F.3d at 658 (citing *Jones v. Metro. Life Ins. Co.*, 385 F.3d 654, 661 (6th Cir. 2004)).

## III.    Discussion

Without "rubber stamping" the administrator's decision, the Court applies a deferential standard of review to the material undisputed facts of this case. Therefore, the Court must uphold the administrator's decision if "it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Baker v. United Mine Workers of Am. Health and Retirement Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991). The Court will address each of these in turn.

**A. Hartford Life's Decision was the Result of a "deliberate, principled reasoning process."**

At the onset, the Court addresses whether Hartford Life's process was affected by an apparent structural conflict. "In the ERISA context, a conflict may exist when a plan administrator is simultaneously responsible for evaluating a claim *and paying out* the benefits." *Jackson v. Blue Cross Blue Shield of Michigan Long Term Disability Program*, 761 F. App'x 539, 543 (6th Cir. 2019) (emphasis in original). In these cases, the administrator's fiduciary interest in granting a valid claim may conflict with its financial one that results from a denial. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 112 (2008). The conflict may arise, as here, "even when . . . the administrator is an insurance company and not the beneficiary's employer." *DeLisle v. Sun Life Assur. Co. of Canada*, 558 F.3d 440, 445 (6th Cir. 2009) (*citing Glenn*, 554 U.S. at 112-15 (2008)). "Such conflicts do not render the denial of benefits invalid *per se*, but the reviewing court must take the conflict into account when evaluating the administrator's decision." *Jackson*, 761 F. App'x at 543 (citing *Curry v. Eaton Corp.*, 400 F. App'x 51, 58 (6th Cir. 2010)). For the Court to give great weight to a conflict of interest, "there must be significant evidence in the record that the insurer was motivated by self-interest, and the plaintiff bears the burden to show that a significant conflict was present." *Smith v. Continental Cas. Co.*, 450 F.3d 253, 260 (6th. Cir. 2006).

The Court is satisfied that Hartford Life's apparent structural conflict did not adversely affect the outcome of an otherwise "deliberate, principled reasoning process." Hartford obtained independent medical reviews and examinations from third-party vendors throughout Davis's LTD claim process. There is nothing in the administrative record to suggest to the Court that these independently hired physicians were incentivized to find Davis disabled. In fact, given the inconsistencies and inaccuracies of Dr. Wener's reports, Hartford Life and its vendor likely went

to greater expense to distill his true findings and render a report that could be comprehended. None of these actions suggest that Hartford Life's decision was influenced by an ulterior desire to deny disability benefits. Quite the opposite – Hartford Life went to great time and expense to ensure that the opinions it did receive were cogent and based upon sound medical evidence.

Next, a review of the procedural history of Davis's STD and LTD benefits decisions with Hartford Life also supports this finding. From the onset, Hartford Life sought clarity and proper documentation concerning Davis's claim. When Dr. Reddy produced his initially conflicting report concerning Davis's limitations and offered no explanation for his lack of progress, Hartford Life engaged its MCM nurse to better assess whether Davis was eligible for LTD benefits. The MCM nurse ultimately concurred with Dr. Reddy's limitation that less than full-time work was appropriate for Davis. Based on Dr. Reddy's reports and its own MCM nurse's recommendation, Davis was initially awarded LTD benefits.

At the end of this initial LTD benefits period, Hartford Life sought updated records from Dr. Reddy. When Dr. Reddy supplied Hartford Life with reports that appeared to contradict his earlier prognosis, Hartford Life conducted surveillance and an in-person interview with Davis. Thereafter, Hartford Life sought the opinions of Davis's treating and consulting physicians, many of whom found that he was capable of sedentary and light-level work. Of his physicians, Dr. Reddy was the only physician that concluded that he was incapable of full-time work. From a review of the administrative record, the Court agrees with Hartford Life's characterization of this process: despite not having the burden to prove disability, Hartford Life went to great lengths to ensure that an accurate claims decision was made by contacting Davis's treating and consulting physicians numerous times throughout the claims process.

Only after reviewing all of this was Davis denied LTD benefits based upon the "Any Occupation" definition defined under the Plan. Moreover, Davis was allowed to challenge this decision through a formal appeals process. Again, Hartford Life invited Davis to submit further medical reports and documents for it to consider. And consider it did. Hartford Life again tried to make sense of the riddles that were sent from Dr. Wener during the vendor's clarification process, along with additional office notes from Dr. Reddy, who had failed to respond to Hartford Life's numerous requests at the decision-making stage. Without more, Hartford Life's decision to uphold its initial denial is the result of a "deliberate, principled reasoning process." *Baker*, 929 F.2d at 1144.

Davis mainly attacks the "alteration" by the vendor of Dr. Wener's report following the IME that Hartford arranged. The Court finds these arguments unavailing. As the record reflects, the versions of the IME reports provided to Hartford Life and upon which it partially based its decision included Davis's functional capabilities as "capable of sedentary or light work,", as limited by his ability to "[s]it for 1 hour at a time for a total of 3 hours per 8 hour day," to "[s]tand for 1 hour at a time for a total of 3 hours per 8 hour day," and "[w]alk for 1 hour at a time for a total of 3 hours per 8 hour day," [AR 1507,1508, 1526] Moreover, Dr. Wener confirmed this opinion on several occasions. *See* [AR 476, 490-91]

In sum, Hartford Life's process was the result of a "deliberate, principled reasoning process" that sought professional medical opinion testimony from Davis's treating and consulting physicians as well as independent medical examiners in addition to surveillance and clarifications on numerous occasions for conflicting reports. *Baker*, 929 F.2d at 1144. Hartford Life's process was diligent and thorough – spanning nearly two full years and soliciting medical records and opinions from Davis's own physicians – and included the completion of in-person

examination, two Employability Reports, and the compilation of thousands of pages of the Administrative Record.  The Court finds no fault in the process employed.

## B.  Hartford Life's Decision was "supported by substantial evidence."

Hartford Life's decision to terminate Davis's LTD benefits was also supported by substantial evidence in the administrative record.  A plan administrator's determination is not arbitrary or capricious when a reasoned explanation, based on the evidence, supports that determination. *Whitaker v. Hartford Life & Accident Ins. Co.*, 121 F. App'x 86, 88 (6th Cir. 2005) (citing *Ky. Fin. Cos. Ret. Plan*, 887 F.2d at 693).

The Supreme Court and the Sixth Circuit have announced "certain guideposts" to follow when reviewing benefit determinations in the ERISA context. *Evans v. Unum Provident Corp.*, 434 F.3d 866, 877 (6th Cir. 2006).  First, "courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003).  Consequently, it is not arbitrary and capricious for a plan administrator to accord more weight to one doctor's opinion over another when deciding if a claimant is entitled to ERISA benefits, since when an administrator does so it is "possible to offer a reasoned explanation, based upon the evidence, for the plan administrator's decision." *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 169 (6th Cir. 2003).

Next, the Sixth Circuit has held that there is "nothing inherently objectionable about a file review . . . in the context of a benefits determination." *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 292-93 (6th Cir. 2006).  This is true regardless of whether the file review is conducted by a physician or a nurse. *See Judge*, 710 F.3d at 663 (citing *Boone v. Liberty Life Assurance Co. of*

*Boston*, 161 Fed. App'x. 469, 474 (6th Cir. 2005)). Still, "the Sixth Circuit has concluded that a file review may be inadequate when: (i) the file reviewer concludes that the claimant is not credible without having actually examined him or her; (ii) the file reviewer fails to provide a rational basis for his or her conclusions or to rebut contrary evidence in the claimant's medical records, or (iii) the plan administrator, without any reasoning, credits the file reviewer's opinion over that of a treating physician." *Kellar v. Aetna Life Ins. Co.*, No. CV 5: 17-81-DCR, 2018 WL 715381, at *8 (E.D. Ky. Feb. 5, 2018) (citing *Judge*, 710 F.3d at 663); *see also Cook v. Prudential Ins. Co. of Am.*, 494 Fed. App'x. 599, 605-06 (citing *Smith*, 450 F.3d at 263).

Here, the administrative record is replete with medical evidence on which Hartford Life based its decision to terminate Davis's LTD benefits. First, Hartford Life relied upon the reports and opinions of the following physicians: 1) Dr. Goyco (Davis's primary care physician), who opined that Davis could perform full-time work, sitting the majority of an eight-hour day for one (1) hour at a time with a sit-stand option, standing and walking intermittently, lifting and carrying up to 10 pounds, and with unrestricted use of his upper extremities [AR 1536-37]; 2) Dr. Marion (board certified in Physical Medicine and Rehabilitation and Pain Medicine), and Dr. Rosaline Vasquez, both of whom opined that Davis's pain and conditions did not prohibit him from returning to full-time work [AR 420-21, 432]; 3) Dr. Wener's IME, which ultimately concluded that Davis could carry out sedentary to light work with the condition that he only sit for one (1) hour at a time for a total of three (3) hours per eight-hour day, stand for one (1) hour at a time for a total of three (3) hours per eight-hour day, and walk for one (1) hour at a time for a total of three (3) hours per eight-hour day [AR 1507]; 4) Dr. Reddy (Davis's oncologist) who provided conflicting reports throughout the entire claims process; 5) Dr. Willett (Davis's orthopedist), who referred Davis to physical therapy to help with his pain management [AR

1717]; 6) Dr. Cooper (Davis's neurologist), who concluded that Davis could perform full-time work with certain restrictions and limitations. [AR 1576-77]

Even though it is not incumbent upon Hartford Life to provide an explanation of why it credited some of Davis's treating and consulting physicians over the opinion of Dr. Reddy, *Nord*, 538 U.S. at 834, Hartford Life's explanation comports with the Court's read – the majority of medical opinion concluded that Davis could return to work with certain limitations. Only one doctor, Dr. Reddy, concluded that he could not. The Court notes that this doctor also failed to respond to Hartford Life's requests repeatedly throughout the process, while other physicians were responsive and supplied information in a timely fashion when Hartford Life was making its decision-making. It was reasonable for Hartford Life to credit the other doctors' opinions over Dr. Reddy's when the majority held a different result based on the medical evidence.

Nor was it an error for Hartford Life to order a file review from the onset when Dr. Reddy supplied contradictory medical information. *Calvert*, 409 F.3d at 292-93. The Court finds Hartford Life's MCM nurse's file review was adequate in this case. First, Hartford Life relied upon its surveillance that was conducted on Davis, as well as in-person interviews when assessing his credibility as a claimant. Next, the MCM nurse provided a rational basis for her conclusions throughout the file review process, initially recommending that Davis be allowed to undergo physical therapy while receiving LTD benefits before ultimately concluding that the weight of medical opinion evidence supported a denial. Lastly, Hartford Life's file reviewer's opinion *concurred* with the majority of some of Davis's treating physicians, including Dr. Goyco and Dr. Cooper.

In sum, Hartford Life's decision to uphold Davis's earlier termination, explained in its June 19, 2014 letter, describes a decision that was based upon substantial evidence. This decision was neither arbitrary nor capricious.

Based on the above, and with the Court being otherwise sufficiently advised,

**IT IS HEREBY ORDERED** as follows:

1.     Plaintiff Richard E. Davis's Motion for Summary Judgment [**R. 113**] is **DENIED**.

2.     Defendant Hartford Life & Accident Insurance Company's Motion for Summary Judgment [**R. 115**] is **GRANTED**.

3.     The Defendant's decision regarding Plaintiff Richard E. Davis's claim for long-term disability benefits will be **AFFIRMED** by separate judgment entered this date.

This the 26th day of August, 2019.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY

cc:     Counsel of record

- 21 -